# CITY OF PORTLAND, *Respondent,*

*v.*

# POINDEXTER, *Appellant.*

## (No. DA 133015, CA 11259)

590 P2d 781

Donald R. Letourneau, Portland Metropolitan Public Defender, Portland, argued the cause and filed the brief for appellant.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Schwab, Chief Judge, and Johnson,* Gillette and Roberts, Judges.

GILLETTE, J.

---

*Johnson, J., resigned December 18, 1978.

## GILLETTE, J.

Defendant appeals his conviction of violating a Portland city ordinance which prohibits carrying a loaded firearm. (Portland City Code, Section 14.32.010).

The first issue before us is whether this court has jurisdiction over the appeal. We conclude that we do. The second issue is whether the trial court was correct in denying defendant's motion to suppress the weapon he was accused of unlawfully carrying. We conclude the trial court erred.

Defendant was stopped by two peace officers for a Class B traffic infraction. According to the testimony of one of the officers, the defendant began yelling after the stop and behaved in an extremely nervous and upset manner. The exact nature of the yelling is unclear, but it appears that the defendant was arguing with the officer about whether a citation for the infraction was warranted. The officer then ordered the defendant to step out of his car and called upon the second officer for assistance. Defendant was taken to the rear of the car, an Oldsmobile, and was frisked. No weapons were found on his person. One of the officers then proceeded to search the inside of the car and found the loaded firearm underneath the front seat. The firearm was not in plain view.

During the time the frisk and the search were occurring, the defendant complied with all requests of the officers. He was not intoxicated. The arresting officer testified that he had no intention of making a custodial arrest of the defendant for the traffic infraction. He also testified that he did not suspect the defendant of any crime prior to discovering the weapon.

The defendant was charged with unlawful possession of a weapon (ORS 166.250) and with violation of the city ordinance prohibiting carrying a loaded

firearm. He was tried in the District Court for Mult-nomah County. He moved to suppress the evidence seized by the officer on the ground that the search was illegal. The trial judge denied the motion. The defendant was found guilty of the city offense and acquitted of the state offense.

The city argues that the defendant's appeal from a district court conviction of a municipal ordinance offense is governed by ORS 221.350 *et seq.,* which, as construed by the Supreme Court in *City of Salem v. Polanski,* 202 Or 504, 276 P2d 407 (1954), and by this court in later cases, limits appellate court review of convictions in municipal court of violations of city ordinances which have been affirmed upon *de novo* review in circuit court to "questions concerning the constitutionality of the ordinance under which the defendant was convicted." Because the defendant raises no such constitutional questions, the city contends that we do not have jurisdiction.

The defendant was tried in district court rather than municipal court. District court procedures are governed generally by ORS chapter 46.

The question upon which the city's jurisdictional argument turns is therefore whether ORS chapter 46 confers appellate court jurisdiction independently of and different in scope from the jurisdiction under ORS 221.350 *et seq.* ORS 46.045(1) provides:

> "The district court for a county within the boundaries of which there is situated the largest part of a city having a population of more than 300,000 shall have all judicial jurisdiction, authority, powers, functions and duties of the municipal court of each such city and the judges thereof with respect to all violations of the charter and ordinances of each such city."

Also relevant is ORS 46.040, which provides in pertinent part:

> "* * * District courts shall have concurrent jurisdiction with municipal courts of all violations of the charter and ordinances of any city wholly or in part within their

[ 554 ]

respective counties, committed or triable within their respective counties."

ORS 46.047 provides:

"When an offense defined by municipal ordinance is tried in district court, it shall be subject to the same statutes and procedures that govern the trial and appeal of a like offense defined by a statute of this state."

In *State v. Kingsley,* 19 Or App 379, 527 P2d 744 (1974), decided before ORS 46.047 was enacted but after ORS 46.040 and 46.045 were in effect, we dismissed an appeal from a district court conviction of a Portland city ordinance violation. The appellant did not challenge the constitutionality of the city ordinance. After discussing ORS 221.350 *et seq.* and cases defining the limited scope of appellate court review under those statutes, we stated:

"* * * Although these statutes [ORS 221.350 *et seq.*] were not referred to when ORS 46.045(1) was adopted, we discern the legislative intent to be that when the District Court of Multnomah County functions as Portland's municipal court, appeals from its judgments in such matters be treated as appeals from municipal court. It follows that we are without jurisdiction to entertain this appeal." 19 Or App at 382.

*Kingsley* was decided in 1974. ORS 46.047 was enacted in 1975 as part of the act making the district courts courts of record and providing for direct appeals from those courts to the Court of Appeals. (Oregon Laws 1975, ch 611.) The question therefore becomes whether ORS 46.047 requires us to change our conclusion in *Kingsley* that the scope of appellate court review of district court convictions of ordinance violations is identical to our scope of review under ORS 221.350 *et seq.* Stated more simply, the question is whether ORS 46.047 reforms appellate court jurisdiction by providing for a scope of review equivalent to that available to persons appealing from district court convictions of state offenses.

We conclude it does. The words "shall be subject to the same statutes and procedures that govern the trial

and appeal [of a statutory offense]" are not ambiguous. Moreover, one of the central purposes of the act through which ORS 46.047 was enacted was to eliminate circuit court *de novo* review of district court criminal convictions and to make such convictions directly appealable to this court. Finally, to construe ORS 46.047 as not conferring plenary appellate jurisdiction would be inconsistent with the constitutionality of the statute. The 1975 act clearly divested the circuit courts of appellate jurisdiction from the district courts. If ORS 46.047 does not give this court jurisdiction, then there would be *no* appeal from district court convictions of ordinance violations while persons convicted of such offenses in municipal courts would retain a right of *de novo* circuit court review and limited appeal in the appellate courts.[1]

We turn to the merit of defendant's appeal. ORS 484.435 provides:

"(1) Searches and seizures otherwise authorized by law incidental to an arrest shall not be authorized if the arrest is on a charge of committing a Class B, C or D traffic infraction unless the arrest is a full custody arrest in which the person arrested is to be lodged in jail, and the decision to place the person arrested under full custody arrest is based upon specific articulable facts justifying his being lodged in jail rather than being given a traffic citation as provided in this chapter and released.

"(2) Nothing in subsection (1) of this section shall be construed to forbid a frisk for dangerous or deadly weapons authorized under ORS 131.605 to 131.625."

---

[1] The city argues that possible equal protection problems arise if persons appealing from convictions of ordinance violations by district courts were entitled to a greater scope of appellate court review than persons convicted of similar violations in municipal courts who appeal pursuant to ORS 221.350 *et seq.* That question is not before us. Assuming *arguendo* that the city's argument were correct, there would be no denial of equal protection in *this* case, where the defendant is entitled to the appellate review rights under ORS 46.047 rather than the limited review under ORS 221.350 *et seq.*

■■ ORS 131.605 to 131.625[2] were enacted as an attempt to partially codify the United States Supreme Court's definition in *Terry v. Ohio* 392 US 1, 88 S Ct 1868, 20 L Ed 2d 889 (1968), of the permissible range of searches which may be conducted by police after stopping persons who, like defendant here, have not been placed under arrest. Accepting the proposition that this defendant's activity may be said to have reasonably placed the officers in fear of their own safety, we hold that the scope of the area searched exceeded anything authorized by ORS 131.615 under the facts of this case. Defendant was outside and at the rear of a large vehicle; he had been frisked and no weapons had been found on his person; he had cooperated with the officers from the time he was ordered out of his car. The search which produced the gun was impermissibly intrusive. The motion to suppress should have been allowed.

Reversed and remanded.

---

[2] ORS 131.605 to 131.625 provide:

"As used in ORS 131.605 to 131.625 unless the context requires otherwise:

"(1) 'Crime' has the meaning provided for that term in ORS 161.515.

"(2) A 'frisk' is an external patting of a person's outer clothing.

"(3) 'Dangerous weapon,' 'deadly weapon' and 'person' have the meaning provided for those terms in ORS 161.015.

"(4) 'Reasonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place he acts as authorized in ORS 131.605 to 131.625.

"(5) A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

ORS 131.615 provides:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry.

"(2) The detention and inquiry shall be conducted in the vicinity of the stop and for no longer than a reasonable time.

"(3) The inquiry shall be considered reasonable only if limited to the immediate circumstances that aroused the officer's suspicion.

ORS 131.625 provides:

"(1) A peace officer may frisk a stopped person for dangerous or deadly weapons if the officer reasonably suspects that the person is armed and presently dangerous to the officer or other person present.

"(2) If, in the course of the frisk, the peace officer feels an object which he reasonably suspects is a dangerous or deadly weapon, he may take such action as is reasonably necessary to take possession of the weapon."