Argued and submitted June 17, 1983, affirmed January 18, reconsideration denied February 24, petition for review denied March 27, 1984 (296 Or 712)

## STATE OF OREGON,
*Respondent,*

*v.*

## LARRY ELMER SMITH,
*Appellant.*

### (82-358; CA A26695)

674 P2d 1206

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his convictions for ex-convict in possession of a firearm, ORS 166.270, and escape in the third degree. ORS 162.145. He contends that the trial court erred in denying his motion to suppress evidence that was seized without a warrant from the vehicle he was driving. We affirm.

On February 21, 1982, Officers Martin and Byrne were patrolling. At approximately 9 p.m., they observed defendant's car pass them at a "high rate of speed" and slide sideways to a stop at an intersection. Defendant then backed up, waited for a green light and drove on.

Martin commented to Byrne that defendant was probably intoxicated; the officers then stopped defendant's car. Defendant got out of his car, displayed a bleeding hand and informed the officers that he was hurrying to a hospital. While defendant was getting out of the car, Martin observed a partially obscured rifle in the rear seat. The officers called for a rescue unit, which arrived a few minutes later. As defendant was being treated by the rescue unit, both officers noticed that he had an odor of alcohol on his breath and dilated, bloodshot eyes. Martin therefore requested that defendant perform sobriety tests, which he passed.

Martin informed Byrne of the existence of the rifle before conducting the sobriety tests. Byrne told Martin that he was going to check the rifle to insure that it was unloaded. As Bryne lifted the rifle from the seat, the clothes covering it came out as well and exposed a holstered, .22 semi-automatic pistol. The officers then learned that defendant was on probation. After defendant's probation officer was contacted, they were advised that he was not allowed to consume alcoholic beverages or to possess any weapons. He was then placed under arrest for unlawful possession of a weapon. When Martin attempted to handcuff defendant, he pushed Martin and Byrne away and ran. The officers caught him a short distance away.

As a threshold matter, it is clear that there was no search. Martin observed the rifle before any intrusion into the vehicle. *See State v. Riley,* 240 Or 521, 523, 402 P2d 741 (1965); *State v. Miller,* 45 Or App 407, 410, 608 P2d 595 (1980). The dispositive issue in this case, however, is whether the seizure

of the rifle meets state and federal constitutional requirements. If it does, the subsequent discovery of the pistol, on which the conviction was based, was proper.

In *State v. Miller, supra,* the defendant was stopped for reckless driving. Five police officers were at the scene within one minute after the stop. After the defendant and his passenger got out of the truck, one of the officers noted an odor of alcohol on their breaths. As the officer contemplated charging the defendant driver with reckless driving, attempting to elude a police officer and driving under the influence of intoxicants, he observed in plain view several inches of a baseball bat protruding from under the seat of the truck. As he removed the bat, he discovered marijuana.

In support of his motion to suppress the marijuana, the defendant argued, *inter alia,* that there was no reasonable basis for the officers to fear injury from the bat. We stated:

> "A law enforcement officer, in the process of making an arrest or questioning a person suspected of criminal activity, may take reasonably necessary measures to protect himself and other persons from injury." 45 Or App at 410-11. (Citations omitted.)

The question in the present case is similar to that in *Miller:* "[whether] the reasonable needs of protection require the officer to enter constitutionally protected areas, such as a vehicle * * *." 45 Or App at 411. Byrne testified that

> "[defendant's] state of mind wasn't good. I certainly was not relaxed around him. He was agitated, he had an injury that appeared to be severe at the time. He'd been drinking. He had all the warning signals that we have to be alert for."

■ Although defendant was outside the car during the sobriety test, there was evidence that he was only four to five feet away from the rifle. Moreover, at the time that the rifle was seized, defendant had not been arrested and might still have been released.[1] In *State v. Riley, supra,* 240 Or at 524-25, the court stated that:

---

[1] Defendant relies on *City of Portland v. Poindexter,* 38 Or App 551, 590 P2d 781 (1979). That case is inapposite. The defendant was stopped for a traffic infraction. He began arguing with one of the officers about the issuance of a citation. He was then taken to the rear of the car and frisked. No weapons were found. One of the officers

"* * * To justify the seizure of a weapon which could be used against the arresting officer, we shall not draw a fine line measuring the possible risk to the officer's safety. The officer should be permitted to take every reasonable precaution to safeguard his life in the process of making the arrest."

The evidence in the present case supports the conclusion of the trial court that the seizure of the rifle was a reasonable precaution for the officer's safety.

Affirmed.

---

then searched the inside of the car and discovered a loaded gun under the front seat. We held that the search failed to meet constitutional requirements:

"During the time the frisk and the search were occurring, the defendant complied with all requests of the officers. He was not intoxicated. The arresting officer testified that he had no intention of making a custodial arrest of the defendant for the traffic infraction. He also testified that he did not suspect the defendant of any crime prior to discovering the weapon." 38 Or App at 553.