## STATE OF OREGON,
*Respondent,*

*v.*

## FREDERIC HENRY STARKWEATHER, III,
*Appellant.*

(87CR-1823; CA A48067)

777 P2d 418

Steven V. Humber, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant seeks reversal of his convictions for possession of a controlled substance, ORS 475.992, and unlawful possession of a weapon, ORS 166.250, assigning as error the trial court's refusal to suppress evidence seized when defendant's car was stopped. We affirm.

On September 6, 1987, Deputies Downing and Oswald were watching traffic on Highway 101 in Coos County. Downing saw defendant drive by at a speed admitted by defendant to be 85 miles per hour. As Downing began to pursue defendant, he saw him swerve into the oncoming lane of traffic. Downing testified that he pursued defendant for two or three miles, at a speed of almost 100 miles per hour, before defendant stopped.

Downing pulled defendant over and, as he approached defendant's pick-up truck, saw scales of a type commonly used to weigh marijuana protruding from a paper bag in the bed of the truck. He also saw defendant, the sole occupant of the vehicle, move to his right, as if he were reaching for something on the floor or seat of the passenger compartment. Defendant appeared nervous, continually glancing back and forth between Downing and Oswald. Oswald watched defendant while Downing went to his patrol car to check defendant's driver's license and to prepare a citation.

Defendant's truck had overheated, and he was permitted to put water into the radiator. He obtained a gallon jug of water from the bed of his truck and opened the hood only about a foot, so that the officers could not see what was inside. When defendant returned to the driver's seat, Oswald saw him look down at a coat on the seat beside him two or three times and then move his hand toward it. He jerked his hand abruptly away from the coat when Oswald stepped forward to see what he was doing. Oswald then asked defendant to move the coat, and defendant started to comply, but then said, "Don't make me do that, officer." Oswald became suspicious that defendant would do something if he were forced to pick up the coat. He asked defendant to step out of the vehicle and told him that he was going to pick up the coat "for officer safety." He did so and found a loaded .38 caliber revolver.

Oswald gave the gun to Downing, who ran a serial

number check on it and found it to be stolen. Defendant was then arrested. A pat-down search yielded a pocket knife and a smoking pipe containing marijuana residue. Empty plastic baggies were found in the coat. The officers then opened the hood and found over a pound of marijuana.

On appeal, defendant challenges only the search under the coat, contending that, because it was unlawful, all physical evidence obtained as a result of and following that search should have been suppressed. His basic premise is that Oswald violated his constitutional rights when he instructed him to move the coat. He relies on *State v. Bates,* 304 Or 519, 747 P2d 991 (1987), in which the court reversed the conviction of a man stopped for a traffic violation, because the officer searched the defendant's vehicle when none of the circumstances confronted by the officer, either individually or collectively, supported a reasonable suspicion that the defendant posed an immediate threat to the officer. The circumstances relied upon in *Bates* were: The vehicle had out of state plates; it was late at night; it was a high crime area; defendant had long hair and wore a black leather jacket; and there were a VCR and a television set in the back seat. The court held that, because none of those facts justified the officer's suspicion that the defendant posed an immediate threat to his safety, the officer was not justified in requiring the defendant to remove and open a bag under the driver's seat of his automobile.

Here, however, defendant's conduct provided objective, articulable facts that gave rise to a reasonable suspicion that defendant was armed and dangerous. He had seemed nervous or excited from the moment that he was stopped. He had been watching both officers constantly. He had filled his radiator without fully opening the hood, as if he were attempting to conceal something in the engine compartment or to prevent Oswald from seeing something concealed there. He had reentered his pickup, glanced two or three times at a coat on the seat beside him, started to reach under it and jerked his hand away rapidly when Oswald drew closer. When asked to move the coat, he said, "Don't make me do that, officer." That conduct on defendant's part gave Oswald ample reason to suspect that defendant had a weapon concealed in or under the coat and had reached for it.

Defendant does not contend that the search under the hood of the truck was otherwise illegal.

Affirmed.