Argued and submitted July 28, reversed and remanded for new trial October 11, 1989

# STATE OF OREGON,
*Respondent,*

*v.*

# JERRY J. WRENN,
*Appellant.*

## (C87-09-35382; CA A48371)

780 P2d 765

John J. Connors, Portland, argued the cause and filed the brief for appellant.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals his conviction for being an ex-convict in possession of a firearm. ORS 166.270. He assigns as error the trial court's denial of his motion to suppress evidence found in the vehicle in which he was a passenger. We reverse.

On September 27, 1987, Officer Larson stopped a pickup with a defective license plate light. He had been spending his shift watching drug houses. Before the stop, he had seen the pickup at two suspected drug houses and testified that the pickup was "directly associated" with one of them. He did not recognize the vehicle's occupants. He requested and received identification from both the driver and defendant, a passenger. He ran checks on both and discovered a traffic warrant for defendant for driving while suspended. Consequently, Larson arrested defendant, handcuffed him, searched him and put him in the back seat of the patrol car.

After placing defendant in the patrol car and before releasing the driver, Larson searched the cab area of the pickup. He testified that he was looking for weapons. In his experience, he associated guns with methamphetamine addicts, and he wanted to protect himself from the driver, whom he was about to release. He found a revolver under the passenger seat. At all times, both defendant and the driver were cooperative with the police.

Defendant does not contend that the stop was unlawful. The sole issue is the lawfulness of the search of the pickup. Because defendant was arrested for driving while suspended, the state does not argue that the search was lawful as a search for evidence incident to defendant's arrest. Furthermore, it does not argue that the search was necessary to protect the officers from defendant. Rather, the state directs our attention to the driver, arguing that the search was necessary to protect the officers from him.

An officer may make a limited search of a stopped car when he has reasonable suspicion based on specific and articulable facts that the occupants present an "immediate threat of serious physical injury." *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987). The Supreme Court in *Bates* expressed a reluctance to second-guess the quick life or death decisions that police officers continually must make. 304 Or at 524.

Nevertheless, a line must be drawn. The appropriate inquiry is whether the officer's actions "were reasonable under the circumstances as they reasonably appeared" when the decision was made. 304 Or at 524-25.

In *Bates,* an officer stopped the defendant for driving a vehicle with excessive exhaust emissions. He became nervous because of the defendant's appearance and because the defendant was driving a car with Washington license plates in a high crime area early in the morning. In addition, the officer was wary, because he saw a television and videocassette recorder in the back seat of the car and a bag at the defendant's feet. Given the defendant's cooperative behavior, the court held that those facts did not give the officer a reasonable suspicion that he was in immediate danger of harm. 304 Or at 526; *see also State v. Wales,* 91 Or App 10, 755 P2d 704 (1988); *City of Portland v. Poindexter,* 38 Or App 551, 590 P2d 781 (1979).

In contrast, we held an officer's limited search of a vehicle lawful in *State v. Starkweather,* 98 Or App 7, 777 P2d 418 (1989). The officers stopped the defendant's vehicle after they had seen it travelling at 85 miles per hour and had chased it for several miles at speeds approaching 100 miles per hour. When the defendant finally stopped, the officer saw him lean to the right, as if reaching for something on the floor. In the bed of the pickup, the officer noticed scales of the kind used to weigh marijuana. The defendant appeared very nervous and kept glancing at his coat on the seat beside him. He jerked his hand away from the coat when the officer stepped into view. We held that those facts gave the officers objective and articulable grounds for fearing immediate harm. *See also Michigan v. Long,* 463 US 1032, 103 S Ct 3469, 77 L Ed 2d 1201 (1983); *State v. McGregor,* 57 Or App 78, 643 P2d 1315 (1982).

In this case, the officers stopped the pickup for a defective license plate light, and both occupants of the pickup were fully cooperative with the police. The only unusual aspect of the stop was the discovery of the warrant for defendant for driving while suspended, but that could not be cause to fear harm from the driver or defendant. The facts that the pickup had been seen at two drug houses that night and that the pickup was "directly associated" with one drug house did

not give the officers reasonable suspicion that they were in immediate danger from its occupants.

█ Although the officer stated that, in his experience, methamphetamine addicts frequently carry guns, the record does not support the officer's assumption that defendant and the driver were addicts. Larson did not recognize either man, and the only indication that they might be involved with drugs was their presence in the pickup that Larson testified was "directly associated" with a drug house. The record does not contain any facts explaining the pickup's association with the drug house. Such a conclusory statement falls short of the constitutional requirement that a search be supported by specific and articulable facts." *State v. Bates, supra,* 304 Or at 524.

█ The state argues that the officer had greater authority to search, because an arrest had occurred. Certainly, an officer may make a limited search incident to arrest to prevent the person arrested from having access to a weapon. *State v. Owens,* 302 Or 196, 200, 729 P2d 524 (1986). Here, however, defendant was handcuffed and in the patrol car when the officer searched the cab of the pickup. The search was not necessary to effectuate a safe arrest but was made to protect the officer from the driver, who was not arrested but was about to be released. The officer had no reasonable suspicion that he was in immediate danger from the driver. Because he did not, the motion to suppress should have been granted.

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

In *State v. Bates,* 304 Or 519, 524, 747 P2d 991 (1987), the Supreme Court noted that, when it comes to the threat of serious physical injury to an officer, "it is not our function to uncharitably second-guess an officer's judgment." Because I believe that the majority has engaged in second-guessing here, I dissent.

Contrary to the majority's assertion, *Bates* does not support the conclusion that Larson lacked a reasonable basis for believing that the officers were in immediate danger. In *Bates,* an officer testified that he had instructed the defendant to slide a bag out from under his car seat because he feared for his safety. The only facts that the officer articulated to support that fear were the defendant's appearance, the presence

of a television and videocassette recorder in the car's back seat, out-of-state license plates and being in a high crime area. The court pointed out that "[n]either officer testified that he thought the object might be a weapon, or a case designed to hold a weapon." 304 Or at 526. It determined that, *without trial court findings on the issue,* that evidence did not demonstrate that the officers had a reasonable suspicion that the defendant posed an immediate danger to their safety. 304 Or at 527.

Unlike in *Bates,* Larson was reasonable in fearing for his safety. He knew that the pickup that he had stopped was associated with methamphetamine houses; in fact, he had seen it at two such houses earlier the same day.[1] In explaining why he searched the pickup's cab, he testified that he was "searching for guns and weapons," because

"from my experience when I worked with methamphetamine addicts for a long time, I know that they carry guns. I was not real interested in having [the driver] have access to any weapons at that point."

Larson knew that he would be releasing the driver to return to the pickup. Furthermore, the trial court specifically found that Larson searched the truck because of safety concerns. That finding is supported by the record, and we are bound by it. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968); *State v. Wales,* 91 Or App 10, 18, 755 P2d 704 (1988).

In short, this is a case in which an officer testified that he conducted a search because he feared for the safety of himself or others, the trial court agreed and there is evidence to support that finding. We should come down on the side of the officer. The trial court should be affirmed.

---

[1] I acknowledge that the record does not support a finding that defendant or the driver were drug *addicts.* However, the gist of Larson's testimony was that methamphetamine and guns go together. Given the vehicle's association with methamphetamine houses, whether defendant and the driver were addicts is not dispositive of whether it was reasonable to believe that the driver posed a danger to the officers.