Argued and submitted December 21, 1994, affirmed March 8, petition for review denied May 23, 1995 (321 Or 246)

In the Matter of the Petition of

BROADWAY DELUXE CAB COMPANY,
aka Broadway Enterprises, Inc.,
dba Broadway Cab Cooperative,
and dba Broadway Cooperative, Inc.,
*Petitioner,*

*v.*

The Filings of the
NATIONAL COUNCIL ON
COMPENSATION INSURANCE
and SAIF Corporation,
*Respondents.*

(90-06-04; CA A71182)

891 P2d 1326

William F. Hoelscher argued the cause for petitioner. With him on the briefs was Hoelscher & Associates.

David L. Runner, Assistant Attorney General, argued the cause for respondent SAIF Corporation. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Peter A. Ozanne waived appearance for respondent National Council on Compensation Insurance.

Before Warren, Presiding Judge, and Richardson, Chief Judge, and Edmonds, Judge.

EDMONDS, J.

### EDMONDS, J.

Broadway Deluxe Cab Company (Broadway) petitions for review of a Department of Insurance and Finance (DIF) order directing it to pay premiums to SAIF, its workers' compensation carrier, for its "shift-lease" taxicab drivers.[1] We review for errors of law, ORS 183.482(8)(a), and affirm.

DIF found these facts. Broadway owns and operates a taxicab business. The City of Portland issues vehicle permits to Broadway, which in turn sells the right to use the permits to taxicab owners. Customarily, each Broadway cab operates 24 hours a day for seven days a week. A driver's normal work shift is 12 hours per day. An owner of a cab may choose to operate his or her cab under Broadway's permit each day for a 12-hour shift and to lease the cab to another driver for the remaining 12-hour shift. The other driver is known as a "shift-lease driver."

If an owner-operator desires to lease the cab, the owner-operator asks Broadway to list the cab for lease. Broadway maintains a list of drivers who have met its shift-lease driver qualifications. It assigns an available cab to a shift-lease driver on a "first-come, first-serve" basis. Under Broadway's practice, shift-lease drivers could be assigned a different cab on each shift that they work. Each shift-lease driver pays a flat fee to the owner-operator for the use of the vehicle. Broadway collects this amount on behalf of the owner-operators at the time of the shift.

SAIF audited Broadway for the period of January 1, 1989, through December 31, 1989, and concluded that Broadway's shift-lease drivers were subject to the Workers' Compensation Law and that Broadway owed premiums for their workers' compensation coverage. Broadway disputed SAIF's determination and sought a hearing before DIF. At the hearing, Broadway argued that the shift-lease drivers were "nonsubject workers" under ORS 656.027(14)(c), and, therefore, no premiums were owed. DIF determined that, because Broadway's shift-lease drivers did not "maintain or furnish"

---

[1] DIF has been renamed the Department of Consumer and Business Services. We will refer to it as DIF throughout this opinion, because that was its name at the time it issued the order in this case.

the cabs that they used, they did not fall within the definition of a "nonsubject worker."

On review, Broadway makes several assignments of error. The first assignment is that DIF erred in ruling that the shift-lease drivers were "subject workers" under the Workers' Compensation Act, because Broadway was not a "subject employer." Second, Broadway argues that DIF's ruling that the drivers were subject workers was error, because they are exempt as "nonsubject workers" under ORS 656.027(14)(c).

In *S-W Floor Cover Shop v. Natl. Council on Comp. Ins.*, 318 Or 614, 630-31, 872 P2d 1 (1994), the Supreme Court said:

> "Thus we conclude that the statutes [ORS 656.027(14)(c) and ORS 656.005(28)] work together in the following manner. A determination first is made as to whether one is a 'worker' before a determination is made as to whether that 'worker' is a 'nonsubject worker' pursuant to one of the exemptions of ORS 656.027. The initial determination of whether one is a 'worker' under ORS 656.005(28) continues to incorporate the judicially created 'right to control' test. One who is not a 'worker' under that test is not subject to the workers' compensation coverage, and the inquiry ends. The 'nonsubject worker' provisions of ORS 656.027 never come into play. If the initial determination made under ORS 656.005(28) is that one *is* a worker because one is subject to direction and control under the judicially created 'right to control' test, then one goes on to determine under ORS 656.027 whether the worker is 'nonsubject' under one of the exceptions of that statute." (Emphasis in original.)

With that format in mind, we turn to Broadway's first argument that the shift-lease drivers are not subject workers and Broadway is not a "subject employer," because Broadway had no right of control over the drivers. SAIF points out that Broadway did not make that argument to DIF. Generally, we will not address an argument made for the first time on judicial review. Broadway counters that the issue is controlled by our decision in *Broadway Deluxe Cab v. Natl. Council on Comp. Ins.*, 113 Or App 482, 833 P2d 1303 (1992), and the Supreme Court's holding in *S-W Floor Cover Shop v. Natl. Council on Comp. Ins., supra.* The *Broadway* case involved a similar issue of whether Broadway was responsible

to pay workers' compensation premiums for its shift-lease drivers for a different audit period than the one involved in this case. In that case, Broadway argued that its shift-lease drivers were independent contractors. We said that, by arguing that the drivers were independent contractors, Broadway necessarily argued that it was not a "subject employer." We applied the right to control test and held for Broadway. Regardless of our holding in that case, we will not review an issue in this case unless it was raised before DIF. Although the facts in each audit period may be similar or identical, nonetheless, the law requires that DIF be given an opportunity to adjudicate a specific issue before this court will review it. Accordingly, petitioner's first assignment of error fails for lack of preservation.

■  In support of its second assignment of error, Broadway contends that even if it is deemed a "subject employer," the shift-lease drivers are "nonsubject workers." It says that, because the shift-lease drivers have a "lease-hold interest" in equipment that they "furnish, maintain and operate" as taxicabs, they are nonsubject workers under ORS 656.027-(14)(c). That statute provides, in part:

> "All workers are subject to this chapter, except those nonsubject workers described in the following subsections:
>
> "* * * * *
>
> "(14)  A person who has an ownership or leasehold interest in equipment and who furnishes, maintains and operates the equipment as used in this subsection. 'Equipment' means
>
> "* * * * *
>
> "(c)  A motor vehicle operated as a taxicab as defined in ORS 767.025."

Thus, the statute requires Broadway's shift-lease drivers to not only have a lease-hold interest in the equipment but to "furnish" and "maintain" the equipment as well as to operate it.

DIF found, in part:

> "[T]he shift-lease drivers did not 'maintain' the cabs to which they were assigned. Cab maintenance was the owner-operator's responsibility. The shift-lease drivers' responsibility ended with the return of the cab to [Broadway] in

good working order, with a full fuel tank. The shift-lease driver was not responsible for the cab's normal wear and tear. Further, although the contract allowed an owner-operator to sue a shift-lease driver for cab damage beyond the value of the $250.00 promissory note, in practice the shift-lease driver had no obligation beyond forfeiture of the note. This was true even if the shift-lease driver destroyed the cab entirely. This being the case, the shift-lease driver cannot be said to maintain the cab."

Broadway does not argue that those findings are not supported by substantial evidence; rather, it contends that DIF has erroneously interpreted the meaning of the word "maintains" in ORS 656.027(14), because

"[d]uring the shifts in which they *lease* a taxicab, shift-lease drivers *maintain* said taxicab at any service station or garage of their choice; they pay for such maintenance out-of-pocket from passenger fares they have collected; their sole compensation comes from any excess in collected fees less weekly or daily lease payments and maintenance costs; and neither the owner-operators nor Broadway receive any portion, percentage or otherwise of the shift-lease drivers' collected passenger fares and gratuities, except for the preset shift-lease fee, which pays the owner-operator for the lease of the vehicle and permit and major maintenance to the vehicle, and Broadway for dispatching and other business services." (Emphasis in original.)

■ The word "maintains" in ORS 656.027(14) is an inexact term because, although the legislature has expressed its meaning completely, the agency has interpretive responsibility as it applies the legislature's meaning to various factual contexts in its rules or orders. *See Springfield Education Assn. v. School Dist.*, 290 Or 217, 233, 621 P2d 547 (1980). On review of the agency's interpretation, our role is to determine whether the agency erroneously interpreted a provision of law in its attempt to discern and apply the legislature's intent. *England v. Thunderbird*, 315 Or 633, 848 P2d 100 (1993). If legislative intent is clear from the text and context of the words in the statute, we end our inquiry. If the intent is unclear, we move to the second level of analysis and examine the legislative history underlying the statute. Finally, if the intent of the legislature is still not clear, we resort to general maxims of statutory construction. *See*

*PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859
P2d 1143 (1993).

We conclude that the use of the word "maintain" in
the text and context of ORS 656.027(14) does not preclude all
doubt about what meaning the legislature intended. In essence,
the issue is one of degree. Broadway argues that the common
meaning of "maintain" encompasses minor repairs, such as
gas, oil and other incidental repairs. SAIF argues that "to
maintain" equipment is to be responsible for keeping the equip-
ment in good working order, including responsibility for major
as well as minor repairs. Because either interpretation is rea-
sonable on the face of the statute and in its context, we turn to
the legislative history underlying the statute for assistance.

The reference to taxicabs in paragraph (c) of ORS
657.027(14) was added in 1985. Or Laws 1985, ch 431, § 1. The
purpose of the 1985 amendment was discussed at a House
Labor Committee meeting on June 5, 1985:

> "[Representative Hill:] Representative Campbell, you
> mentioned employees. It's my understanding that cab com-
> panies have owner-operators and bona fide employees, yet I
> think I heard you say that they would be put together under
> this language.

> "[Representative Campbell:] No, *the intention of this is
> that the owner, the people who have an investment in it would be
> excluded.* Those who are employees, and I think I mentioned
> the fact and it's, I think it's clear in the language, *employees,
> whether they be dispatchers or cab drivers, would continue to be
> included.* This would not exclude them. It's not the intent.

> "* * * * *

> "[House Labor Committee Counsel:] The only question I
> would have is whether or not — and I'm playing devil's
> advocate; please don't —

> "[Chairman Shiprack:] It's early in the day, so we can
> accept that.

> "[House Labor Committee Counsel:] Okay. People are
> always concerned about end runs around statutory language.
> *Is there a possibility that Broadway Cab Company or some
> other cab company would require an employee — a back-up
> driver or whatever they call them — to have some kind of
> leasehold interest in a cab? Does that happen?*

"[Mr. Gillespie:]   There's another bill that was —

"[Chairman Shiprack:]   Identify yourself.

"[Mr. Gillespie:]   I'm sorry. Sam Gillespie, representing Radio and Broadway Cab. There was another bill, House Bill 2876, which deals with state-wide authority for regulation. The City of Portland is regulating the cab industry — that — by being regulated and with state-wide authority — it requires that that could not happen. There's no phony partnerships or any of that back door stuff that can take place and the Portland [sic], through their licensing of the owners — they would lose their license and be prevented from doing business and they maintain that very well — I mean, they police it very well. *That could not happen.*

"[Chairman Shiprack:]   Does the devil's advocate have any more questions?

"[House Labor Committee Counsel:]   Well I would just state for the record that I think the 'and' here is important and to state that it is the intent of the bill — they have to 'furnish, maintain and operate' the equipment as well as have an 'ownership or leasehold interest' in it." (Emphasis supplied.)

This history indicates that the legislature amended ORS 656.027(14) to exempt only those individuals who have a substantial interest in the equipment, an interest that requires them to be responsible for maintenance to the same extent as individuals who are owners of the vehicles or who have a financial investment in them. The evidence is uncontroverted that any major repairs occasioned by a shift-lease driver's accident or negligence results only in the driver's forfeiture of a $250 promissory note. Repairs in excess of $250 remain the owner-operator's responsibility. The shift-lease driver is not responsible for the vehicle's ordinary wear and tear resulting from the driver's use during a 12-hour shift. The driver's obligation is to return the vehicle at the end of the shift with a full gas tank. In the light of that evidence, DIF's interpretation of the meaning of the word "maintains" is in keeping with the legislature's intention. It did not err in ruling that the shift-lease drivers do not "maintain" the cabs as the statute requires. Because the shift-lease drivers must meet all of the statutory elements of ORS 656.027(14), they cannot qualify as "nonsubject workers."

Broadway's other arguments and third assignment of error do not require discussion.

Affirmed.