Argued and submitted on March 15, reversed and remanded for new trial
October 9, 1996

In the Matter of
Jonathan Dee Finch, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF LINCOLN COUNTY,
*Respondent,*

*v.*

JONATHAN DEE FINCH,
*Appellant.*

(945665; CA A88004)

925 P2d 913

Jeffrey C. Hollen argued the cause for appellant. With him on the brief was Richardson, Ouderkirk & Hollen.

Kaye E. Sunderland, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Child appeals an order finding him within the jurisdiction of the juvenile court for acts which, if committed by an adult, would constitute possession of a controlled substance. ORS 475.992(4)(a).[1] He assigns error to the trial court's denial of his motion to suppress. We review *de novo*, ORS 419A.200(5), and reverse.

The material facts are uncontroverted.[2] Child, a 16-year-old, was a student at Newport High School. On October 4, 1994, child and another student were involved in a fist fight on nonschool property across the street from the high school campus. Assistant Principal David Malcolm and another teacher rushed to break up the fight and, when the teacher intervened, child immediately "back[ed] off" and stopped. Malcolm then ordered child and the other student to accompany him to the principal's office. As he did so, Malcolm noticed a jacket and a camera lying on the ground a short distance from where the boys had been fighting. When Malcolm learned that the jacket and camera belonged to child, he asked another student to carry those items back to the school grounds. At no time during the fight had child made any effort to reach for his jacket.

When they reached the principal's office, Malcolm told the student who had been carrying child's camera and jacket to take the camera back to class and to give Malcolm the jacket. When Malcolm took the jacket, "it seemed heavier than—than what—* * * a jacket should have been, I felt, to that point." Because of the weight and the fact that child had

---

[1] ORS 475.992(4) provides, in part:

"It is unlawful for any person knowingly or intentionally to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.940 to 475.995. Any person who violates this subsection with respect to:

"(a) A controlled substance in Schedule I, is guilty of a Class B felony."

[2] Because the facts are undisputed, the trial court's suppression ruling did not rest, either implicitly or explicitly, on credibility determinations. *Compare State ex rel Juv. Dept. v. G.P.*, 131 Or App 313, 319, 884 P2d 885 (1994) (addressing deference given to trial court's credibility determinations in juvenile cases) *with id.* at 323-25 (Deits, P. J., dissenting) (same).

been in a fight, Malcolm became suspicious that child's jacket might contain a weapon, in violation of school rules.[3] Child had never been stopped for possession of a weapon at school.

Malcolm then reached into the pocket of child's jacket. There is no evidence that, before doing so, Malcolm either saw the outline, or felt the shape, of any item in the jacket. In the first pocket he searched, Malcolm found a homemade brass "bong" pipe about two-and-a-half inches long and one-half inch wide, with a residue that seemed to smell of marijuana. Malcolm then searched the second pocket and found a small plastic bag containing 20 grams of psilocybin mushrooms, a Schedule I drug. *See* ORS 475.005(6).

The juvenile department subsequently filed a petition alleging that child had engaged in conduct, *i.e.*, possession of the psilocybin mushrooms, which, if committed by an adult, would violate ORS 475.992(4)(a). Child moved to suppress all items Malcolm had seized from his jacket. In so moving, child made two alternative arguments. First, notwithstanding the United States Supreme Court's determination that, for purposes of the Fourth Amendment, school searches must be tested against a contextual "reasonableness" standard, *New Jersey v. T.L.O.*, 469 US 325, 105 S Ct 733, 83 L Ed 2d 720 (1985),[4] Article I, section 9, of the Oregon

---

[3] The Lincoln County School District Student Code of Conduct - Policy 5131 provided, in part:

"A student, while at school, on school property, or at school sponsored activities, shall:

"* * * * *

"(11) Not possess, store or carry real or look-alike firearms, explosive devices, weapons (clubs, hunting knives, switchblades, etc.), dangerous chemicals, illicit drugs, stolen property or contraband."

[4] In *T.L.O.*, the Court held: "[T]he legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search." 469 US at 341. An assessment of reasonableness under *T.L.O.* requires a two-part inquiry:

"[F]irst, one must consider 'whether the * * * action was justified at its inception,' *Terry v. Ohio*, 392 US [1, 20, 88 S Ct 1868, 20 L Ed 2d 889 (1968)]; second, one must determine whether the search as actually conducted 'was reasonably related in scope to the circumstances which justified the interference in the first place,' ibid. Under ordinary circumstances, a search of a student by a teacher or other school official will be 'justified at its inception' *when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.* Such a search will be permissible in its scope when the measures adopted are

Constitution[5] requires that searches of students or their effects by school administrators be supported by probable cause. Child asserted that Malcolm lacked probable cause to search his jacket. Second, even if *T.L.O.*'s "reasonableness" standard could somehow be imported and applied under Article I, section 9, that standard was not satisfied here.

The state's arguments were, essentially, the inverse: Under Article I, section 9, the validity of school searches should be tested against a *T.L.O.*-like "reasonableness" standard, and Malcolm's search comported with that standard. In the alternative, if probable cause were required, Malcolm had probable cause to believe that child had violated the school's policy against possession of weapons on campus.

The trial court concluded that Malcolm's search was lawful, regardless of which standard applied:

"The court finds that David Malcolm was acting as a governmental agent for purposes of constitutional law, and not as a private citizen. Searches of students by school authorities are subject to scrutiny under Article I, Section 9 of the Oregon Constitution and [the] Fourth Amendment to the United States Constitution[.] Whether it is the probable cause standard required in police cases, or the more flexible 'reasonableness' standard of *New Jersey v. T.L.O.*, the evidence in this case should not be suppressed.

"Here, we have a school authority who finds a student in the act of fighting. He is concerned about school safety and weapons on campus so he searches the 'heavy jacket' before he returns it. If this were a case involving a police officer witnessing a street fight, had he turned a 'heavy' jacket over to one of the combatants without searching it first, most would say he was unprofessional and careless for not first checking it for weapons. If nothing else, a police officer would be entitled to do it for the purposes of officer safety.

_____

reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id.* at 341-42 (emphasis supplied; footnotes omitted).

[5] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

In this era of violence and youth in possession of deadly weapons, Malcolm's action was not only reasonable, he had probable cause to believe there were weapons."

Thereafter, child was adjudicated following a stipulated facts trial.

On appeal, the parties reiterate the arguments they made to the trial court with respect to suppression.[6] The question of whether Article I, section 9, permits school searches on a showing of less than probable cause is important and provocative. Nevertheless, we do not—indeed, cannot—reach that constitutional question because we decide this appeal on other grounds. *Zockert v. Fanning,* 310 Or 514, 520, 800 P2d 773 (1990). In particular, we conclude that, even assuming that a *T.L.O.*-like "reasonableness" standard could be imported into Article I, section 9, under the totality of the circumstances, Malcolm did not have reasonable grounds to suspect that a search of child's jacket would yield evidence of a violation of school rules. *Accord State ex rel Juv. Dept. v. DuBois,* 110 Or App 314, 318, 821 P2d 1124 (1991) (declining to reach the question of whether, under Article I, section 9, school searches may be justified "on less than probable cause"; concluding that, even if probable cause were required, school administrator's search of the child was supported by probable cause).[7]

---

[6] In addition, the state, invoking *AFSCME Local 2623 v. Dept. of Corrections,* 315 Or 74, 77, 843 P2d 409 (1992), argues that the search was a lawful administrative search because the Lincoln County School District adopted a school policy authorizing school authorities to search a student where they have reasonable suspicion to believe the student possesses unauthorized or illegal items. The state did not, however, make that argument below, and we will not consider it for the first time on appeal. *See, e.g., Broadway Deluxe Cab v. Natl. Council on Comp. Ins.,* 133 Or App 324, 891 P2d 1326, *rev den* 321 Or 246 (1995). We note, moreover, that, even if that contention had been preserved for our review, its ultimate success would depend on a showing that the search was supported by reasonable suspicion. As amplified below, we conclude, in the context of addressing the parties' other arguments, that Malcolm's search of child's jacket was not supported by reasonable suspicion.

[7] In *DuBois,* a school administrator searched a "fanny pack" that the child was wearing and found a loaded handgun, some bullets, and marijuana. The child had a history of possessing weapons on campus and, immediately before conducting the search, school officials obtained information from two reliable student informants that there was a rumor that there was a gun on campus and that they had seen the child with a gun at school the day before. The administrator who conducted the search took the fanny pack from the child, and before opening the pack, "she could tell immediately that there was a gun in it." *DuBois,* 110 Or App at 316. The

The state equates *T.L.O.*'s "reasonableness" inquiry with the test for "reasonable suspicion" that applies to "stops" and "frisks" pursuant to ORS 131.605 to ORS 131.625. Under ORS 131.615, an officer who "reasonably suspects that a person has committed a crime" may stop that person and make a reasonable inquiry that is "limited to the immediate circumstances that aroused the officer's suspicion"; under ORS 131.625(1), an officer may frisk a stopped person for dangerous weapons if the officer "reasonably suspects that the person is armed and presently dangerous to the officer or other person present." ORS 131.605(4) provides that "reasonably suspects" for purposes of ORS 131.615 and ORS 131.625

> "means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS 131.605 to 131.625."

In *State v. Ehly*, 317 Or 66, 854 P2d 421 (1993), the court amplified the standard of "reasonable suspicion" for an investigatory stop pursuant to ORS 131.615: The officer must be "able to point to specific and articulable facts that give rise to a reasonable inference that a person has committed a crime[.]" *Id.* at 80. That standard

> "requires an objective test of observable facts. Whether the suspicion is reasonable often will depend on the inferences drawn from the particular circumstances confronting the officer, viewed in the light of the officer's experience."[8] *Id.* (citations omitted).

The state argues that Malcolm's search of child's jacket was based, at least, on reasonable suspicion that the jacket contained a weapon, in violation of school rules. Malcolm testified that he decided to search the jacket for a weapon because child had been in a fight and because the jacket "seemed heavier than * * * what a jacket should have been." He identified no other facts motivating or supporting his decision to search. He did not, for example, state that he

---

administrator who conducted the search testified that, "in her eight years of experience as a public school teacher, 'if a student carries a gun one day or a knife or something of that nature, often times they'll bring it back to school.' " *Id.* at 318.

[8] *Cf. State v. Gulley*, 324 Or 57, 921 P2d 396 (1996) (searches of probationers pursuant to terms of probation are evaluated under "reasonable belief" standard).

had information that child possessed a weapon, or that child had ever possessed a weapon on campus—indeed, he acknowledged the contrary. *Compare DuBois*, 110 Or App at 316 (the child had a history of possessing weapons at school, and two reliable student informants told school administrators that there was "a rumor that there was a gun on campus" and "they had seen child on campus with a gun the day before"). There is no evidence that, before searching the jacket, Malcolm felt or saw the shape of a weapon or a container that he believed contained a weapon. *Compare id.* at 316 (while holding fanny pack, and before opening pack, administrator "could tell immediately that there was a gun in it"). Nor did Malcolm testify, based on his experience as a school administrator, that students who engage in fist fights are likely to possess weapons at school. *Compare id.* at 318 (administrator who conducted search testified, based on her experience as a teacher, that "if a student carries a gun one day, or a knife or something of that nature, often times they'll bring it back to school"). Finally, Malcolm acknowledged that, at the time he searched the jacket, he knew that child had made no move toward his jacket during the fight, that the jacket was found along with a camera, and that child was taking a photography class. Malcolm admitted that the additional weight of child's jacket was consistent with the weight of a 35mm camera lens, which would be "standard for a camera for a high school class."

Given those circumstances, Malcolm lacked reasonable suspicion that child had violated the school rule against possessing weapons on campus. Child's participation in a fist fight and the additional weight in his jacket would not, without more, support a reasonable inference that he possessed a weapon. There is no evidence in the record substantiating a particularized inference that child, as a student who was involved in a fist fight, was likely to possess a weapon. *Accord State v. Baldwin*, 76 Or App 723, 727-28, 712 P2d 120, *rev den* 301 Or 193 (1985) (finding no reasonable suspicion justifying officer safety frisk: "[D]efendant is an individual, not a statistic. An officer must point to facts related to the individual, not to general statistics[.]").

Nor, in the totality of the circumstances, did the additional weight of child's jacket, without more, give rise to

a reasonable inference that the jacket contained a weapon. As noted previously, Malcolm acknowledged that the jacket was found with a camera that child was using in his photography class and that the additional weight was consistent with a lens for that camera. We note, moreover, that Malcolm's suspicions were based *solely* on the *weight* of the jacket, and not on the size or shape of any object in the jacket. The heft of the "bong" pipe Malcolm ultimately found was consistent with the weight of a universe of benign objects high school students commonly possess. We are left, inevitably, with the conclusion that the search was based on generalized concerns and not on "specific and articulable facts that [gave] rise to a reasonable inference" that the jacket contained a weapon. *Ehly*, 317 Or at 80.

We similarly reject the state's alternative "officer safety" rationale. The state presented no evidence, through Malcolm's testimony or otherwise, that Malcolm's decision to search was based on "specific and articulable facts" that child "might pose an immediate threat of serious physical injury" to Malcolm "or to others then present." *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). Like the defendant in *Bates*, child had a "cooperative attitude" (he stopped fighting immediately upon being told to do so). *Id.* at 527. He did not engage in any agitated, "aggressive or threatening behavior" after Malcolm broke up the fight; and there was "an absence of any apparent weapon." *Id.* Nor did child engage in any furtive behavior, such as reaching for his jacket either during or after the fight, which might, in an appropriate context, support a reasonable and particularized inference that the subject poses an "immediate threat." *Id.* at 524. *See State v. Peterson*, 143 Or App 505, 923 P2d 1340 (1996) (defendant's nervousness and a jacket lying on the passenger seat did not justify officer safety search, because no weapons were visible and defendant cooperated with officer without making furtive movements toward jacket). *Accord State v. Smay*, 118 Or App 31, 35, 845 P2d 1294 (1993) (finding reasonable suspicion justifying officer safety frisk where defendant appeared intoxicated and nervous, continually whispered to his companions, and held his hand behind his back in a position where the officer could not see it and where officer testified "that he had previous bad experiences involving persons who

behaved similarly"); *State v. Starkweather*, 98 Or App 7, 10, 777 P2d 418 (1989) (finding reasonable suspicion for officer safety search of suspect's coat where suspect "seemed nervous or excited from the moment that he was stopped" and engaged in a series of furtive movements; he "glanced two or three times at a coat on the seat beside him, started to reach under it and jerked his hand away rapidly when [the officer] drew closer").

Malcolm's search of child's jacket was not supported even by reasonable suspicion. Accordingly, the court erred in denying child's motion to suppress.

Reversed and remanded for new trial.