[No. 14315–8–I. Division One. July 22, 1985.]

THE STATE OF WASHINGTON, *Respondent*, v. MIGUEL
ALVAREZ PEREZ, *Appellant.*

*Nancy L. Talner* of *Washington Appellate Defender
Association*, for appellant.

482

*Norm Maleng, Prosecuting Attorney,* and *Al Matthews, Deputy,* for respondent.

COLEMAN, J.—On October 6, 1983, at approximately 1:30 a.m., Seattle Police Officers Hogue and Charles noticed defective taillights on a vehicle driven by appellant Miguel Perez. The officers pulled the vehicle over, and Hogue approached the driver's side while Charles approached the passenger's side. When Officer Hogue asked Perez for his driver's license, he detected the odor of alcohol and noticed that Perez' eyes were bloodshot. Suspecting that Perez might be intoxicated, Officer Hogue asked if he would be willing to perform some sobriety tests. Perez agreed, exited the vehicle, and moved with Hogue some 18 to 20 feet to the sidewalk.

At this point, Officer Charles, who was standing on the passenger side of the vehicle, saw something suspicious in the rear of the vehicle. Charles stated he was curious because

> I was looking in and I saw a car speaker. It was in the back of the car with a wire sticking out like it had been detached or something. So when I was first looking, when I was looking inside of the car, when I first went up, I was looking from outside in seeing where the speaker was located in the car, and that speaker appeared not to belong in the car.

Charles then walked around to the driver's side of the vehicle. While standing by the open door, Charles looked down and observed some wood and what appeared to be the barrel of a gun protruding from beneath a jacket on the floorboard. Charles pulled the coat off and found a sawed-off rifle. He removed ammunition from the gun and then showed it to Officer Hogue. Perez was then arrested for a weapons violation and given his *Miranda* rights.

After the arrest, Perez' vehicle was towed to Seattle Central Towing and searched pursuant to a warrant. During the search, the police uncovered some property stolen in a recent robbery. Prior to his subsequent trial and conviction

for armed robbery, Perez moved to suppress physical evidence, including the rifle, seized from his car. The motion was denied.

We first consider whether Officer Charles' discovery of the rifle was the product of a warrantless "search," or whether his observations were made in "open view."

## "SEARCH" FROM OUTSIDE VEHICLE

Evidence discovered in "open view," as opposed to "plain view," is not the product of a "search" within the meaning of the Fourth Amendment. *State v. Seagull,* 95 Wn.2d 898, 901–02, 632 P.2d 44 (1981). In distinguishing "open" from "plain" view, the *Seagull* court quoted *State v. Kaaheena,* 59 Hawaii 23, 28–29, 575 P.2d 462, 466–67 (1978):

> In the "plain view" situation "the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy." The officer has already intruded, and, if his intrusion is justified, the objects in plain view, sighted inadvertently, will be admissible. *Coolidge v. New Hampshire,* 403 U.S. 443 [29 L. Ed. 2d 564, 91 S. Ct. 2022] (1971); *Harris v. United States,* 390 U.S. 234 [19 L. Ed. 2d 1067, 88 S. Ct. 992] (1968).
>
> In the "open view" situation, however, the observation takes place from a non–intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public. *See* Moylan, *The Plain View Doctrine: Unexpected Child of the Great "Search Incident" Geography Battle,* 26 Mercer L. Rev. 1047, 1096, 1097 (1975). The object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution.

*Seagull,* at 901–02. In the instant case, the trial judge for the suppression hearing concluded that Officer Charles' discovery of the weapon was justified under the "open view" doctrine.[1]

---

[1]Though the defense argued that Officer Hogue's testimony regarding the car door (*i.e.,* driver's door was closed) suggested that the gun was not in open view,

██ Perez argues, however, that he had an expectation of privacy in the contents of his vehicle and that Officer Charles' discovery of the gun was the result of improper "spying" into the vehicle. These arguments are without merit. As the United States Supreme Court stated in *Texas v. Brown,* 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983), "[t]here is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." (Citations omitted.) *Brown,* 460 U.S. at 740. In *Brown,* a Texas police officer stopped Brown's vehicle at night at a routine driver's license checkpoint. The officer asked Brown for his license, shined his flashlight into the car, and saw an opaque party balloon, knotted near the tip, fall from Brown's hand to the seat beside him. While Brown searched his glove compartment for his license, the officer shifted his position to obtain a better view and noticed small plastic vials containing white powder. The Supreme Court stated:

> the fact that Maples "changed [his] position" and "bent down at an angle so [he] could see what was inside" Brown's car . . . is irrelevant to Fourth Amendment analysis. The general public could peer into the interior of Brown's automobile from any number of angles; there is no reason Maples should be precluded from observing as an officer what would be entirely visible to him as a private citizen.

*Brown,* 460 U.S. at 740.

*Brown* is analogous to the instant case in several significant respects. First, in both cases, an officer noticed something suspicious in a lawfully stopped vehicle. Second, both

---

the trial judge found Officer Charles' testimony (*i.e.,* driver's door was open) more reliable because Hogue's attention was focused on Perez and the sobriety tests rather than the car. Appellant argues that because of this conflict in the testimony, the State has not carried its burden of establishing that the object which appeared to be a weapon was observed from a nonintrusive vantage point. This argument fails because credibility determinations are the exclusive function of the trial court, and we are bound by such determinations. *In re Sego,* 82 Wn.2d 736, 739–40, 513 P.2d 831 (1973).

officers attempted to obtain a better view of the suspicious items without actually entering the vehicles. Finally, after changing their vantage points, both officers discovered suspicious items not seen from their first vantage points. Such conduct enabling the officers to observe the vehicle interior is not, under *Brown,* a search within the meaning of the Fourth Amendment.[2]

### SEARCH AND SEIZURE OF RIFLE

■ Perez also contends that the officer's removal of the coat and seizure of the rifle violated his Fourth Amendment rights. As a general rule, officers conducting an investigatory detention may search for and at least temporarily seize weapons if they have reason to believe that they are dealing with an armed and dangerous detainee. *State v. Williams,* 102 Wn.2d 733, 738–39, 689 P.2d 1065 (1984); *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 103 S. Ct. 3469 (1983); *State v. Leagea,* 442 So. 2d 699 (La. Ct. App. 1983); *State v. Reed,* 388 So. 2d 776 (La. 1980); *see State v. Malbeck,* 15 Wn. App. 871, 873, 552 P.2d 1092 (1976). In *Long,* the Supreme Court articulated the protective search test as follows:

> the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. *See Terry,* 392 U. S., at 21.

(Footnote omitted.) *Long,* at 1049–50. The focus in a case of this nature is on the *reasonableness* of the officer's con-

---

[2]Decisions in other jurisdictions support this result. *State v. Jackson,* 296 Or. 430, 677 P.2d 21, 26–27 (1984) (officer shining light into window on passenger side of van after lawful traffic stop not illegally intrusive; court citing *Texas v. Brown,* 460 U.S. 730, 75 L. Ed. 2d 502, 103 S. Ct. 1535 (1983)); *State v. Powell,* 99 N.M. 381, 658 P.2d 456, 459–60 (Ct. App. 1983) (officer shining light into pickup cab after lawful traffic stop not illegally intrusive even though driver was outside at the rear of the vehicle).

duct in light of all the circumstances, including the scope or intensity of the search and/or seizure. *Long,* at 1051.

In the present case, Officer Charles had reason to believe Perez was armed when, from a lawful vantage point, he observed a piece of wood and what looked like a gun barrel covered by a jacket on the vehicle floorboard. Given the circumstances and the reasonable inferences that would be drawn by a cautious officer, there was also reason to believe that Perez might be dangerous because: (1) the coat covering the rifle suggested an attempt by Perez to conceal the weapon; (2) the rifle was situated on the floorboard so as to be difficult to view but still readily accessible by the driver; (3) the officer noticed a stereo speaker in the back of the car which was detached and "appeared not to belong in the car"; and (4) it was 1:30 a.m. and Perez had bloodshot eyes and an odor of alcohol about his person. Given these warning signals, a prudent and cautious officer would and should protect himself by simply seizing the weapon—a minimally intrusive and clearly reasonable action—and checking to see if it is loaded.

Perez argues, however, that the seizure of the rifle was not justified because he made no threatening gestures and Officer Hogue had him under control some 18 feet away from the vehicle. This argument is not persuasive. As one court stated:

> [I]f some overt threat or threatening act is a prerequisite, it would place the police in an untenable position; an officer might well be dead of a gunshot wound inflicted by the seemingly innocuous, even friendly appearing, and apparently cooperative person before him. . . . An officer is not required to experience trembling fear or an overt threat as a prerequisite to *reasonable action* which protects his safety.

(Italics ours.) *State v. Groth,* 144 Vt. 585, 590, 481 A.2d 26, 29 (1984); *see also State v. Miller,* 45 Or. App. 407, 608 P.2d 595, 597 (1980).[3]

---

[3]The Oregon Court of Appeals stated:

"Where an officer is faced with a situation that requires quick action and often

Regarding Perez' distance from his vehicle when the rifle was seized, it is important to remember that Perez had been drinking and was not handcuffed or otherwise physically restrained. Thus, it was conceivable that at some point during or after the sobriety tests Perez might make a move for the rifle or get close enough to the vehicle to at least engage in a struggle for possession of the rifle. By temporarily seizing the rifle and removing any ammunition, the officers could quickly defuse this potentially dangerous situation.

Moreover, the record discloses that but for the seizure of the rifle, Perez would likely have been released and allowed to regain immediate access to the gun. Thus, any course of action other than seizing the rifle would have merely postponed the danger to the officers. *Michigan v. Long,* 463 U.S. 1032, 77 L. Ed. 2d 1201, 1221, 103 S. Ct. 3469 (1983); *United States v. McClinnhan,* 660 F.2d 500, 503–05 (D.C. Cir. 1981). In such circumstances, an officer's temporary protective seizure of a partially visible weapon is a reasonable protective measure. *State v. Smith,* 66 Or. App. 516, 674 P.2d 1206, 1208 (1984); *State v. Miller,* 45 Or. App. 407, 608 P.2d 595, 596–97 (1980). We agree with the Oregon Supreme Court's statement in *State v. Riley,* 240 Or. 521, 524–25, 402 P.2d 741, 743 (1965):

> To justify the seizure of a weapon which could be used against the arresting officer we shall not draw a fine line measuring the possible risk to the officer's safety. The officer should be permitted to take every reasonable precaution to safeguard his life . . .

We hold that Officer Charles' minimally intrusive seizure and inspection of the rifle was constitutionally permissible.

---

hasty decisions in order to remove any risk of danger to himself or others, we should take into account the circumstances facing the officer. Severe judicial second guessing with the benefit of detached analysis and hindsight is not appropriate. The officer's good faith belief that he observed something that could reasonably be a weapon to harm him or others should not be disregarded." *State v. Miller,* 45 Or. App. 407, 411, 608 P.2d 595, 597 (1980).

488

The judgment of the trial court is affirmed.

CORBETT, C.J., and GROSSE, J., concur.