243 P.3d 165 (2010)
STATE of Washington, Appellant/Cross-Respondent,
v.
Scott Tyler BARNES, Respondent/Cross-Appellant.
No. 39627-1-II.
Court of Appeals of Washington, Division 2.
November 16, 2010.
*166 Abigail E. Hurd, Clark County Prosecuting Attorney's Office, Vancouver, WA, for Appellant/Cross-Respondent.
John A. Hays, Attorney at Law, Longview, WA, for Respondent/Cross-Appellant.
QUINN-BRINTNALL, J.
¶ 1 A trial court entered an order suppressing evidence found during an automobile search incident to arrest and dismissed the charge of felony harassment without prejudice. The State appeals the trial court's suppression order, arguing (1) evidence of the gun case is admissible under article 1, section 7 of the Washington Constitution and Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), or, alternatively; (2) the evidence is admissible under the "open view" exception to the warrant requirement for searches and seizures. The respondent/cross-appellant, Scott Tyler Barnes, argues that the state constitution *167 and State v. Patton, 167 Wash.2d 379, 219 P.3d 651 (2009), support the trial court's order suppressing the evidence, but he challenges the trial court's factual finding that the gun case was unlocked. In his cross appeal, Barnes argues that the gun was not evidence of the crime and that the trial court erred when it failed to dismiss the felony harassment charge with prejudice.
¶ 2 We hold that substantive evidence supports the trial court's findings of fact and its determination that police had probable cause to arrest Barnes and search his vehicle but that the trial court's findings do not support its conclusions of law. Accordingly, we reverse the trial court's order suppressing the evidence and remand for further proceedings consistent with this opinion.

FACTS

Factual Background
¶ 3 On November 13, 2008, at approximately 12:30 p.m., Barnes entered a Washington Mutual Bank in Washougal, Washington. Apparently unable to receive the assistance with his account from a bank employee that he sought, Barnes became upset and said, "I am sick of everyone wanting to take my money"; "I am sick of having a bank account"; and "I feel like going and getting a gun and shooting everyone." Report of Proceedings (RP) at 4. Barnes left the bank branch soon after.
¶ 4 The bank employee first notified the branch assistant manager about Barnes's threat to get a gun and shoot everyone. Then the employee notified both the police department and the bank's internal security specialist. Washougal Police Patrol Sergeant Kim Yamashita received the bank employee's call and noted Barnes's statements. Yamashita knew Barnes from previous calls involving assaultive behavior.
¶ 5 Two hours later, at approximately 2:30 p.m., Sergeant Yamashita saw Barnes come out of an auto parts store and get into his car, which was parked in a public parking lot about one-half mile from the bank. Yamashita approached Barnes and ordered him to step out of his car. Yamashita then placed Barnes under arrest for felony harassment of the bank employee and put him in the back seat of her patrol vehicle. Yamashita read Barnes his Miranda[1] rights while he was sitting in the patrol car's back seat.
¶ 6 Leaving Barnes in the patrol vehicle, Sergeant Yamashita and another Washougal police officer returned to Barnes's car. Through the car's passenger-side window the two officers saw a gun box and a helmet on the front side passenger seat. Yamashita opened the unlocked passenger-side car door, retrieved the gun box, opened it, and found a Taurus 9 mm handgun inside. Inside the car, the officers also saw a handful of bullets in the front console cup holder, a can of black spray paint, a Bill Clinton face mask, and a t-shirt that read "dead or alive." Clerk's Papers (CP) at 16-17.

Procedural Background
¶ 7 On November 17, 2008, the State charged Barnes with one count of felony harassment for the death threats made to the bank employee and one count of second degree unlawful possession of a firearm. On January 30, 2009, the State filed an amended information, adding one count of second degree attempted assault. The same day, Barnes filed a motion to suppress his statements and all evidence seized during the November 13, 2008 search as evidence seized pursuant to an illegal stop or arrest based on lack of probable cause. On February 18, 2009, the State filed a second amended information adding a firearm enhancement to the second degree attempted assault charge. On May 11, 2009, Barnes filed a motion to suppress the evidence seized during the search of his vehicle as evidence seized in violation of Gant.[2]
¶ 8 On June 29, 2009, the trial court held CrR 3.5 and 3.6 hearings on Barnes's suppression motions. During the CrR 3.5 hearing, Sergeant Yamashita testified that she read Barnes his Miranda rights and that he indicated he understood those rights. Yamashita *168 also testified that Barnes was "excitable" but that he spoke freely and made statements "trying to minimize the statement that he made [at the bank]." RP at 33.
¶ 9 During the CrR 3.6 hearing, Barnes called two witnesses: the bank employee and Barnes. First, the bank employee testified about the events of November 13, 2008, as outlined above. The bank employee also testified that there had been past incidents at the bank involving Barnes but that the November 13 incident was the first time involving the police. Second, Barnes testified that Sergeant Yamashita read him his Miranda rights, that he understood them, and that he had made his statements voluntarily. Barnes further testified that he placed the gun case on the passenger seat of his car prior to being arrested.
¶ 10 Following the hearings, the trial court made an oral ruling denying Barnes's motions to dismiss and to suppress based on lack of probable cause. On July 16, 2009, the trial court issued its findings of fact and conclusions of law. The trial court's factual findings included that (1) the officers had probable cause to believe Barnes may have committed felony harassment, (2) Sergeant Yamashita arrested Barnes and physically placed him in the patrol vehicle, and (3) the officers believed they had a right to search Barnes's car because he was under arrest even though he was not in the car. On the issue of whether evidence seized during the officers' warrantless search was admissible under article I, section 7 of the Washington Constitution, the trial court found that (1) the gun case was in open view, (2) there was no evidence of an obstruction to the officers' ability to get a warrant, and (3) there were no exigent circumstances justifying the warrantless search and seizure of the gun case. The trial court concluded, "The State has not carried its burden that the [gun case] was not unreasonably seized and it is therefore suppressed, mere mobility is not a sufficient showing." CP at 39.
¶ 11 On July 23, the State filed a motion for reconsideration of the CrR 3.6 findings of fact and conclusions of law. The State argued that evidence of the gun was admissible (1) under the inevitable discovery doctrine,[3] (2) under the trial court's requirement of exigent circumstances, or (3) because the officer's actions were reasonable under the Fourth Amendment. During the July 24 hearing on the State's motion, the trial court stated that current Washington law required exigent circumstances to search a vehicle incident to arrest and denied the motion. Last, the trial court granted the State's motion to dismiss the felony harassment charge without prejudice because of the State's belief that proof of the allegations was substantially impaired by the suppression of the gun case evidence.[4]
¶ 12 The State timely appeals the trial court's dismissal of the felony harassment charge, the basis of which was the pretrial order suppressing evidence of the gun case. Barnes cross-appeals, contending that the trial court erred when it did not dismiss the felony harassment charge with prejudice.

DISCUSSION

Suppression of Evidence
¶ 13 To review a trial court's ruling on a suppression motion, we examine whether substantial evidence supports the challenged findings and whether those findings support the trial court's conclusions of law. State v. Ross, 106 Wash.App. 876, 880, 26 P.3d 298 (2001), review denied, 145 Wash.2d 1016, 41 P.3d 483 (2002). Substantial evidence is "`evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises.'" State v. Jeannotte, 133 Wash.2d 847, 856, 947 P.2d 1192 (1997) (internal *169 quotation marks omitted) (quoting Olmstead v. Dep't of Health, 61 Wash.App. 888, 893, 812 P.2d 527 (1991)). We do not review credibility determinations on appeal, leaving them to the fact finder. State v. Frazier, 82 Wash.App. 576, 589 n. 13, 918 P.2d 964 (1996) (citing Fisher Props., Inc. v. Arden-Mayfair, Inc., 115 Wash.2d 364, 369-70, 798 P.2d 799 (1990)). And we treat unchallenged findings as verities on appeal. Ross, 106 Wash.App. at 880, 26 P.3d 298.
¶ 14 Barnes contends that the trial court properly suppressed the evidence under either Gant or under article I, section 7 of the Washington Constitution as interpreted in Patton. Specifically, Barnes first contends that it was not reasonable for the officers to believe that the car contained evidence of the offense of arrest, felony harassment. See Gant, 129 S.Ct. at 1719. Because the gun case evidence was in open view and is relevant to the "true threat" requirement of the felony harassment charge, we disagree.
¶ 15 A person is guilty of harassment if, without lawful authority, the person knowingly threatens to cause bodily injury immediately or in the future to the person threatened or to any other person. RCW 9A.46.020(1)(a)(i). A person who harasses another is guilty of a class C felony if the person harasses another person by threatening to kill the person threatened or any other person. RCW 9A.46.020(2)(b)(ii). In State v. Kilburn, 151 Wash.2d 36, 41, 84 P.3d 1215 (2004), our Supreme Court held that to avoid infringing on the freedom of speech, RCW 9A.46.020(1)(a)(i) must be read as prohibiting only "true threats." The term "true threat" is defined as "`a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted ... as a serious expression of intention to inflict bodily harm upon or to take the life'" of another. Kilburn, 151 Wash.2d at 43, 84 P.3d 1215 (internal quotation marks omitted) (alteration in original) (quoting State v. Williams, 144 Wash.2d 197, 208-09, 26 P.3d 890 (2001)).
¶ 16 ER 401 defines "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Here, the police officers arrested Barnes on the charge of felony harassment a short time (just two hours) after and a short distance (one-half mile) from the bank where he had threatened to go "get a gun" and come back and "shoot[] everybody" in the bank. RP at 4. While standing outside Barnes's car, the officers saw a gun case,[5] later found to have a gun inside, on the passenger seat in Barnes's car. The fact that Barnes had access to a gun when he threatened to return and shoot everyone at the bank branch is evidence which could lead a reasonable person to infer his threat was genuine and that he had taken steps to carry it out. Accordingly, the gun case is relevant evidence properly offered to prove that Barnes made a "true threat" as required to prove a violation of RCW 9A.46.020(1)(a)(i).
¶ 17 Next, Barnes argues that, under Patton, a defendant must pose a safety risk or the vehicle must contain evidence of the crime of arrest that could be concealed or destroyed in order to justify a warrantless vehicle search.[6] 167 Wash.2d at 383-84, 219 *170 P.3d 651. But Barnes's reliance on Patton is misplaced.
¶ 18 In Patton, our Supreme Court concluded that the justifications to search a car incident to arrest did not apply because (1) Patton was not a driver or recent occupant of the car, (2) Patton was secured in a patrol car at the time of the search, and (3) there was no evidence of the crime of arrest or contraband in the car. 167 Wash.2d at 394-96, 219 P.3d 651. In addition, the Patton court specifically noted that the State did not argue that there was probable cause to search the car. 167 Wash.2d at 386 n. 4, 219 P.3d 651. Thus, the court concluded that because there was simply no nexus between the arrestee, the crime of arrest, and the vehicle, the search of the vehicle in Patton violated article I, section 7 of the Washington Constitution. 167 Wash.2d at 395, 219 P.3d 651.
¶ 19 Here, Barnes was arrested for felony harassment based on his threat to return with a gun and shoot everyone in the bank. He was placed in the back seat of Sergeant Yamashita's patrol vehicle. Unlike in Patton, the vehicle searched belonged to Barnes, he was preparing to drive away at the time of his arrest, and the State established probable cause to believe that Barnes's vehicle contained relevant evidence. On this point, the trial court agreed:
I find that theirthat given the call that Officer Yamashita had and the circumstances under which she observed [the gun case] in terms of proximity in time, that she had probable cause to believe that it might be evidence of a crime to have this gun case if there was a gun inside since Mr. Barnes was within some proximity to the bank and fairly close in time to when he made threats to shoot people within the bank. So there was probable cause to believe that the gun case was evidence of the crime.
RP at 88. Moreover, unlike in Patton, the evidence (gun case) was in open view.
¶ 20 Evidence discovered in "open view," as opposed to "plain view," is not the product of a "search" within the meaning of the Fourth Amendment. State v. Perez, 41 Wash.App. 481, 483, 704 P.2d 625 (1985) (citing State v. Seagull, 95 Wash.2d 898, 901-02, 632 P.2d 44 (1981)). In the "plain view" situation, the view takes place after an intrusion into activities or areas as to which there is a reasonable expectation of privacy. Perez, 41 Wash.App. at 483, 704 P.2d 625. The officer has already intruded and, if his intrusion is justified, the objects of obvious evidentiary value in plain view, sighted inadvertently, may be seized lawfully and will be admissible. Perez, 41 Wash.App. at 483, 704 P.2d 625 (quoting State v. Kaaheena, 59 Haw. 23, 28, 575 P.2d 462 (1978)).
¶ 21 In contrast, in the "open view" situation, "the observation takes place from a non-intrusive vantage point. The governmental agent is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public." Seagull, 95 Wash.2d at 902, 632 P.2d 44 (quoting Kaaheena, 59 Haw. at 28-29, 575 P.2d 462). The object under observation is not subject to any reasonable expectation of privacy and the observation is not within the scope of the constitution. Perez, 41 Wash.App. at 483, 704 P.2d 625. It is well established that a person has a diminished expectation of privacy in the visible contents of an automobile parked in a public place. State v. Young, 28 Wash.App. 412, 416, 624 P.2d 725 (citing United States v. Chadwick, 433 U.S. 1, 12-13, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)), review denied, 95 Wash.2d 1024, 1981 WL 191082 (1981).
¶ 22 Barnes's vehicle was parked in a public parking lot and the officers observed the unlocked gun case while standing in a public place outside the unlocked passenger-side door of his vehicle. Thus, substantial *171 evidence supports the trial court's finding that the gun case was in open view. Despite this ruling, the trial court, citing State v. Ozuna, 80 Wash.App. 684, 690, 911 P.2d 395, review denied, 129 Wash.2d 1030, 922 P.2d 97 (1996), suppressed the gun case evidence, stating that the State did not show exigent circumstances necessitating a warrantless automobile search.
¶ 23 In Ozuna, an officer investigating a report of "vehicular prowling" observed an illegally parked vehicle. 80 Wash.App. at 686, 689, 911 P.2d 395. A check of the car's registration revealed that it belonged to an individual known to the officer as having a criminal record. Ozuna, 80 Wash.App. at 686, 911 P.2d 395. After learning the owner's identity, the officer went to the unlocked, unoccupied vehicle and removed several items later determined to be stolen. Ozuna, 80 Wash.App. at 686-87, 911 P.2d 395. The Ozuna court agreed with the trial court's determination that there was no probable cause to believe the car contained evidence of a crime and affirmed the trial court's suppression order. 80 Wash.App. at 688-89, 911 P.2d 395. The Ozuna court further stated, "Even if we had found probable cause here, the warrantless search was unlawful because no exigencies existed." 80 Wash.App. at 690, 911 P.2d 395 (citing State v. Patterson, 112 Wash.2d 731, 735-36, 774 P.2d 10 (1989)). Ozuna is distinguishable from the present case. The evidence seized in Ozuna was not in "open view"; the officer removed items from the car based solely on his knowledge of the vehicle owner's criminal history and did not know them to be evidence of a crime until further investigation after seizing the items revealed them to be stolen. 80 Wash. App. at 686-87, 911 P.2d 395.
¶ 24 Here, substantial evidence supports the trial court's finding that the gun case was in open view but the trial court's conclusion of law that Ozuna applied requiring exigent circumstances is in error. Once seen in open view, the gun case was immediately recognized as relevant evidence with respect to felony harassment and the "true threat" requirement to RCW 9A.46.020(1)(a)(i). Accordingly, the police officers lawfully seized and preserved it and the trial court erred in ordering suppression of relevant evidence that Barnes had in open view at the time of his arrest for felony harassment.

Dismissal Without Prejudice
¶ 25 Barnes cross-appeals, arguing that the trial court erred when it refused to dismiss the charges with prejudice. We review a trial court's dismissal decision under CrR 8.3 for an abuse of discretion. State v. Bible, 77 Wash.App. 470, 471, 892 P.2d 116, review denied, 127 Wash.2d 1011, 902 P.2d 163 (1995). A trial court abuses its discretion when its decision is manifestly unreasonable, or is exercised on untenable grounds or for untenable reasons. Bible, 77 Wash.App. at 471, 892 P.2d 116. CrR 8.3(a) states, "The [trial] court may, in its discretion, upon written motion of the prosecuting attorney setting forth the reasons therefor, dismiss an indictment, information or complaint." RAP 2.2(b) permits the State to appeal in a criminal case only from certain limited superior court decisions and only if the appeal does not place the defendant in double jeopardy. RAP 2.2(b)(2) includes "[a] pretrial order suppressing evidence, if the trial court expressly finds that the practical effect of the order is to terminate the case."
¶ 26 The State filed its motion for dismissal of the felony harassment charge without prejudice on July 24, 2009, on the ground that the order suppressing the evidence "substantially impaired" the State's ability to prove its case. Because we reverse and remand the order suppressing the evidence on which the order dismissing the charge without prejudice is predicated, we need not address Barnes's cross appeal.
¶ 27 Reversed and remanded for further proceedings.
I concur: HUNT, P.J.
VAN DEREN, J. (dissenting).
¶ 28 I respectfully dissent and would affirm the trial court's ruling suppressing the evidence seized from Barnes' vehicle because the officers were required to obtain a search warrant before seizing the gun box from Barnes' vehicle under State v. Valdez, 167 Wash.2d 761, 777, 224 P.3d 751 (2009).
*172 ¶ 29 The majority correctly cites Arizona v. Gant, ___ U.S. ___, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009), which allows a vehicle search to be performed when evidence relating to the crime of arrest is reasonably contained within the vehicle. Majority at 168-69. Here, Police Sergeant Yamashita arrested Barnes for felony harassment for threatening the bank employees that he would return with a firearm and shoot them. Yamashita removed Barnes from the vehicle and placed him in her patrol vehicle. Returning to Barnes' vehicle, Yamashita saw a gun box in open view on the front seat of Barnes' vehicle.
¶ 30 In Valdez, our Supreme Court appears to provide greater privacy protections to Washington citizens than does Gant. Valdez provides that a vehicle search without a warrant incident to the arrest and removal of the vehicle's occupants may occur only to avoid destruction of evidence and for officer safety. 167 Wash.2d at 777, 224 P.3d 751. Neither concern was implicated after Barnes' arrest and removal from his vehicle.
¶ 31 And neither Gant nor Valdez mention the open view exception to the necessity to obtain a search warrant when a driver is arrested and removed from a stopped vehicle. Thus, whether the open view exception applies to vehicle searches after Gant and Valdez is unclear. Furthermore, because the gun itself was not in open view in Barnes' vehicle, I disagree that the gun box alone would trigger the open view exception to the search warrant requirement.
¶ 32 Thus, I would affirm the trial court's ruling suppressing the evidence seized from Barnes' vehicle.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The United States Supreme Court issued Gant on April 21, 2009.
[3] The parties disputed whether Barnes's car was impounded following his arrest. The bank employee testified that she believed the car had been impounded. This issue was relevant because, under the State's inevitable discovery doctrine theory in its motion for reconsideration, had the car been impounded, the officers would have found the gun case when they conducted an inventory. The trial court, however, did not find that the car had been impounded by the Washougal police department and rejected the State's argument.
[4] The trial court expressly found that the practical effect of the suppression order was to terminate the case. RAP 2.2(b)(2).
[5] Barnes argues that the trial court erred under State v. Stroud, 106 Wash.2d 144, 720 P.2d 436 (1986), overruled by State v. Valdez, 167 Wash.2d 761, 224 P.3d 751 (2009), because the State failed to prove the gun case was unlocked. The trial court found the case to be unlocked and substantial evidence supports this finding. Sergeant Yamashita testified that she retrieved the gun box from Barnes's unlocked vehicle. Yamashita then testified that she opened the box and found a Taurus 9 mm handgun inside. Nothing in Yamashita's testimony indicates she was forced to break a lock or required a key to open the gun box. Because credibility determinations are for the trier of fact, we do not second guess the trial court's determination of Yamashita's credibility on appeal. State v. Thomas, 150 Wash.2d 821, 874, 83 P.3d 970 (2004) (citing State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990)).
[6] Barnes does not rely on Valdez, 167 Wash.2d at 777, 224 P.3d 751, which states that a search warrant must be obtained prior to a search incident to an arrest if (1) the search can be delayed or obtained without jeopardizing officer safety or risking the concealment or destruction of evidence, and (2) the warrantless search does not fall under another applicable exception. In Valdez, our Supreme Court held that officers exceeded the scope of the vehicle search incident to arrest warrant exception when they searched the dashboard of the defendant's vehicle after securing him in the back of a patrol vehicle. 167 Wash.2d at 778, 224 P.3d 751. In reaching its decision, our Supreme Court noted, "[T]he State has not shown that it was reasonable to believe that evidence relevant to the underlying crime might be found in the vehicle." Valdez, 167 Wash.2d at 778, 224 P.3d 751. In contrast to Valdez, here officers saw evidence of the crime of arrest in open view.