FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 14

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| STATE OF WASHINGTON, | No. 42534-3-II |
| --- | --- |
| Respondent, | |
| v. | |
| SCOTT L. GOLDADE, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. — Scott L. Goldade appeals his conviction of second degree unlawful possession of a firearm, arguing that the trial court erred by denying his motion to suppress the fruits of an unlawful search. We affirm.

## FACTS

Grays Harbor County Deputy Sheriff Robert Wilson responded to a neighbor's report of a physical altercation in a mobile home park residence. When he knocked on the door, no one answered. Deputy Wilson then heard a loud thud from behind the residence and went to investigate.

The deputy saw Goldade running toward the mobile home park entrance, and heard neighbors yelling that "he just ran out the back." Report of Proceedings (RP) at 7. After a quarter mile chase, Wilson arrested Goldade, handcuffed him, and walked him back to the patrol car parked at the residence. Goldade said he ran because he did not want police contact.

When Deputy Wilson knocked again on the mobile home door, a woman who identified herself as "Brenda" answered. RP at 8. Wilson said he was investigating a domestic violence report and asked what had happened. Brenda was visibly upset, but Wilson saw no signs of physical injury, and she denied any physical altercation. After Brenda explained that she and

Goldade had been arguing, the deputy asked if anyone else was present. Brenda said a child was in the residence, and Wilson asked if he could enter to make sure the child was safe. Brenda said he could.

Deputy Wilson followed Brenda to a back bedroom and talked to a toddler who seemed unaffected by the dispute. As Wilson returned to the front door, he saw a rifle leaning up against the living room wall. When asked, Brenda said that she and Goldade lived together at the residence.

Following an interview with Detective Keith Peterson, Goldade signed a post-arrest statement in which he denied ownership of the firearm but admitted that his prior felony conviction barred him from its possession. The State charged him with second degree unlawful possession of a firearm and Goldade moved to suppress the rifle and his post-arrest statement, arguing that they were the products of an unlawful search. Deputy Wilson and Peterson testified at the suppression hearing, and the trial court considered their testimony as well as Wilson's initial report in making its decision.

The trial court denied the motion to suppress, ruling that Deputy Wilson's entry into the residence was justified under the emergency aid and consent exceptions to the warrant requirement. Goldade then waived his right to a jury and agreed to a bench trial on stipulated facts. After finding him guilty as charged, the trial court imposed a low-end standard range sentence of four months.

Goldade appeals the trial court's suppression ruling and assigns error to the following findings of fact and conclusions of law:

## FINDINGS OF FACT

. . . .

### 3.

The defendant was arrested and placed in a patrol car. The deputy went to investigate the report of domestic violence. A woman answered the door, who claimed that the only dispute was a verbal argument and that no violence occurred. The officer asked if anyone else was in the residence, and the woman stated that a child was in the residence. In an effort to ascertain the well-being of the child, the officer asked the woman for consent to enter the trailer. She verbally agreed.

### 4.

The deputy entered and went back to the bedroom where the child was. He found a toddler that was quiet, but seemed not to be injured or affected by the dispute. As the officer walked back toward the door he saw a rifle leaned up against the wall. Deputy Wilson believed the defendant had previously been convicted of a felony and should not have been in possession of the rifle.

. . . .

## CONCLUSIONS OF LAW

. . . .

### 2.

When entering the trailer, the officer had reason to be concerned for the safety of a minor child within. This situation justified entry under the emergency exception to the warrant requirement. For this reason, the officer had the right to enter the trailer to ascertain the child's well-being.

### 3.

Moreover, an occupant of the dwelling, an alleged victim of domestic violence, gave consent for the officer to enter. The intent in entering was not to search the dwelling for contraband or evidence, but to ascertain the well-being of a child. For this reason her consent was sufficient to allow the officer to enter the dwelling, even if the defendant was present at the time.

. . . .

Clerk's Papers at 23-24.

ANALYSIS

We review a trial court's findings of fact following a suppression hearing for substantial evidence. *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994). Substantial evidence is evidence in sufficient quantity to persuade a fair-minded, rational person of the finding's truth. *Hill*, 123 Wn.2d at 644; *State v. Barnes*, 158 Wn. App. 602, 609, 243 P.3d 165 (2010). We defer to the fact finder regarding the credibility of witnesses. *Barnes*, 158 Wn. App. at 609. Unchallenged findings are verities on appeal. *Hill*, 123 Wn.2d at 644. We review the trial court's legal conclusions de novo, but where the conclusions are actually findings, we review them for substantial evidence. *State v. Smith*, 165 Wn.2d 511, 516, 199 P.3d 386 (2009); *State v. Weber*, 159 Wn. App. 779, 786, 247 P.3d 782, *review denied*, 171 Wn.2d 1026 (2011).

Goldade contends that Deputy Wilson's warrantless search of his residence violated article I, section 7 of the Washington Constitution, which provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." The home enjoys a special protection under this provision. *State v. Schultz*, 170 Wn.2d 746, 753, 248 P.3d 484 (2011). The best source of "authority of law" is a warrant. *Schultz*, 170 Wn.2d at 753. There are a few "'jealously and carefully drawn exceptions,'" however, to the warrant requirement. *State v. Meneese*, 174 Wn.2d 937, 943, 282 P.3d 83 (2012) (quoting *State v. McKinnon*, 88 Wn.2d 75, 79, 558 P.2d 781 (1977)). The trial court found two exceptions satisfied in this case: the emergency aid exception and the consent exception.

EMERGENCY AID EXCEPTION

The emergency aid exception emerges from the community caretaking function and "'allows for the limited invasion of constitutionally protected privacy rights when it is necessary for police officers to render aid or assistance.'" *Schultz*, 170 Wn.2d at 754 (quoting *State v.*

*Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004)). To justify a warrantless intrusion under the emergency aid exception, six somewhat overlapping requirements must be met: (1) the police officer must subjectively believe that someone likely needs assistance for health or safety reasons; (2) a reasonable person in the same situation would similarly believe there was need for assistance; (3) there is a reasonable basis to associate the need for assistance with the place being searched; (4) there is an imminent threat of substantial injury to persons or property; (5) state agents must believe a specific person or persons or property are in need of immediate help for health or safety reasons; and (6) the claimed emergency is not a mere pretext for an evidentiary search. *Schultz*, 170 Wn.2d at 754-55. The State bears the burden of proving that these requirements are satisfied. *Schultz*, 170 Wn.2d at 754.

As the *Schultz* court observed, domestic violence presents unique challenges to law enforcement. 170 Wn.2d at 755. Domestic violence situations can quickly escalate into significant injury and typically occur within the privacy of a home. *Schultz*, 170 Wn.2d at 755. As a result, "'[p]olice officers responding to a domestic violence report have a duty to ensure the present and continued safety and well-being of the occupants.'" *Schultz*, 170 Wn.2d at 755 (quoting *State v. Raines*, 55 Wn. App. 459, 465, 778 P.2d 538 (1989)). The fact that police are responding to a situation that likely involves domestic violence may be an important factor in evaluating both the subjective belief of the officer that someone likely needs assistance and the reasonableness of that belief. *Schultz*, 170 Wn.2d at 756.

Goldade does not assign error to the trial court's finding that Deputy Wilson responded to a report of a physical domestic dispute. Although Goldade does object to the court's subsequent description of Brenda as "an alleged victim of domestic violence," CP at 23, the circumstances

surrounding Wilson's interaction with Brenda support this description.[1] Wilson's testimony also establishes that he subjectively and reasonably believed that a child inside the residence needed his assistance. We contrast the facts here with those in *Schultz*, where the evidence of domestic violence consisted only of a report of a couple yelling; the fact that responding officers heard raised voices and a man saying he wanted to be left alone; the defendant's agitated appearance when she answered the door; and her statement that no one was there before a man emerged from the bathroom. 170 Wn.2d at 760. The Supreme Court held that these facts did not justify entry under the emergency aid exception because the officers' subjective belief that entry was necessary was not reasonable. *Schultz*, 170 Wn.2d at 760. In so holding, the court added that "if the officers could not have ascertained the location of the man whose voice they had heard, they would have been entitled to make further inquiries and perhaps enter the home to verify that he was safe." *Schultz*, 170 Wn.2d at 761.

Here, Deputy Wilson responded to a report of domestic violence. He received no response when he knocked at the door and encountered a man fleeing from the home to the hue and cry of the neighbors. He found an occupant who was visibly upset and learned that a child was elsewhere in the residence. We agree that the deputy's belief that he needed to enter the home to check on the child's well-being was reasonable.

With regard to the remaining emergency aid exception requirements, we further agree that it was reasonable for Deputy Wilson to walk into the bedroom to find the child he could not see from the front door. Even though Brenda denied that a physical altercation had occurred, she was visibly upset. As a result of the argument between her and Goldade, there was a threat of

---

[1] Goldade also challenges the finding that he was arrested before Wilson questioned Brenda. Although the timing of the arrest seems of questionable relevance, Wilson's testimony supports this finding.

injury to any child who was present. As the *Schultz* court observed, domestic violence situations can quickly escalate into significant injury. 170 Wn.2d at 755. Wilson's testimony establishes that he entered with the intent to check on a specific person and not to search for contraband or evidence. Consequently, the trial court's findings of fact support its conclusion that the emergency aid exception requirements were satisfied in this case.[2]

Because the trial court properly upheld Deputy Wilson's entry under this exception, we need not address the court's alternative ruling that Brenda's consent justified that entry. The trial court did not err by denying the motion to suppress and by finding Goldade guilty of second degree unlawful possession of a firearm.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Worswick, C.J.

Bjorgen, J.

---

[2] Goldade also assigns error to the finding that Wilson believed Goldade had previously been convicted of a felony. He does not discuss this finding elsewhere in his brief, so we need not address it further. RAP 10.3(a)(6). In any event, it is supported by Wilson's report.