FILED
COURT OF APPEALS
DIVISION II

2013 DEC -3 AM 9: 22

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43244-7-II |
| Respondent, | |
| v. | |
| FRANCISCO JAVIER MILLAN, | UNPUBLISHED OPINION |
| Appellant. | |

QUINN-BRINTNALL, P.J. — Francisco Millan was convicted of first degree driving while license suspended and first degree unlawful possession of a firearm. Millan appealed, arguing that under *Gant*,[1] the firearm should have been suppressed. Our Supreme Court held that the new rule in *Gant* applied retroactively, and remanded to the trial court for a suppression hearing to determine whether the firearm was properly admitted at trial. The trial court found that the firearm was properly admitted, and Millan appeals. We affirm.

## FACTS

Millan was convicted of first degree unlawful possession of a firearm.[2] *State v. Robinson*, 171 Wn.2d 292, 298, 253 P.3d 84 (2011). Millan appealed, arguing that the recent decision in *Gant* required reversal because the search of the vehicle was unconstitutional.

---

[1] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

[2] Millan was originally charged with first degree driving with license suspended and first degree unlawful possession of a firearm. Millan pleaded guilty to first degree driving while license suspended.

*Robinson*, 171 Wn.2d at 298. Our Supreme Court held that *Gant* applied retroactively to Millan's case. *Robinson*, 171 Wn.2d at 306. Our Supreme Court then remanded the case back to the trial court for a suppression hearing. *Robinson*, 171 Wn.2d at 307.

The arresting officers, Officers Christopher Shipp and Timothy Caber of the Tacoma Police Department, testified at the suppression hearing. Shipp testified that on April 1, 2007, he and Caber responded to a domestic violence call. Two citizen witnesses reported seeing a male, later identified as Millan, grab a female, later identified as his wife, by the hair, drag her into a car, and hit her several times in the head. Millan's wife was obviously upset but told the responding officers that no physical assault had taken place. However, based on the statements of the witnesses, the officers placed Millan under arrest for assault.

At the suppression hearing, Officer Caber testified that he found a pistol in the backseat of the car during a search incident to arrest. He could not then recall when he first saw the pistol or whether the pistol was visible through the window. But at Millan's original trial years earlier, Officer Caber testified that he walked up to the car and saw a pistol through the car window. The pistol was balanced on its spine on the floorboard of the back seat of the car. Under the then applicable law, Officer Caber performed a search incident to arrest and seized the pistol. Holding that the changes in the law announced after the search of Millan's car applied retroactively, our Supreme Court reversed and remanded for a suppression hearing under the new standard.

At the suppression hearing, the trial court concluded that the firearm was in "plain" view and that there was a safety concern for the officers and the public due to the volatile nature of domestic violence incidents. Based on its conclusions of law, the trial court determined that the

firearm was admissible evidence. Because the trial court properly ruled the pistol was admissible, we affirm Millan's conviction for first degree unlawful possession of a firearm.

## ANALYSIS

We review the trial court's legal conclusions in a suppression hearing de novo. *State v. Johnson*, 128 Wn.2d 431, 443, 909 P.2d 293 (1996). Under both the Fourth Amendment and article I, section 7, a warrantless search is per se unreasonable unless the search falls within one or more exceptions to the warrant requirement. *State v. Ross*, 141 Wn.2d 304, 312, 4 P.3d 130 (2000). Originally, Millan's firearm was admitted under the search incident to arrest exception to the warrant requirement. *Robinson*, 171 Wn.2d at 297-98. However, the search incident to arrest exception to the warrant requirement, which allowed officers to search a suspect's car at the time of the arrest, was restricted by the United States Supreme Court's opinion in *Gant* and our Supreme Court's opinion in *State v. Patton*, 167 Wn.2d 379, 394-95, 219 P.3d 651 (2009). Under *Gant* and *Patton*, officers may search a vehicle incident to arrest "only where there is 'a reasonable basis to believe that the arrestee poses a safety risk or that the vehicle contains evidence of the crime of arrest that could be concealed or destroyed, and that these concerns exist at the time of the search.'" *Robinson*, 171 Wn.2d at 302 (quoting *Patton*, 167 Wn.2d at 394-95). Here, the Supreme Court ruled that under *Gant* and *Patton*, Millan was entitled to move to suppress the gun and that under the changes in search and seizure law occurring after the search of Millan's car, the search incident to arrest exception could not justify the search of Millan's car. It remanded for a suppression hearing to determine whether another exception to the warrant requirement allowed admission of the firearm.

Here, the trial court determined the pistol was properly seized under what it referred to as the "plain view" doctrine. Although it used the term "plain view," the trial court actually applied

3

the open view doctrine in this case and noted that the officers not only saw the pistol from outside the car but that exigent circumstances warranted seizure of the weapon. Thus, it denied the motion to suppress. The pistol was properly admissible under the open view doctrine. We affirm the trial court's order determining that the evidence was admissible.

Although the plain view and open view doctrine are similar, discovery of evidence in open view is not a search within the meaning of the Fourth Amendment. *State v. Barnes*, 158 Wn. App. 602, 612, 243 P.3d 165 (2010) (citing *State v. Perez*, 41 Wn. App. 481, 483, 704 P.2d 625 (1985)). "In the 'plain view' situation, the view takes place *after* an intrusion into activities or areas as to which there is a reasonable expectation of privacy." *Barnes*, 158 Wn. App. at 612 (citing *Perez*, 41 Wn. App. at 483). If the officer's intrusion is justified, evidence in plain view is admissible. *Barnes*, 158 Wn. App. at 612 (citing *Perez*, 41 Wn. App. at 483).

But evidence is in open view when the officer views the evidence from a "'non-intrusive vantage point.'" *Barnes*, 158 Wn. App. at 612 (quoting *State v. Seagull*, 95 Wn.2d 898, 902, 632 P.2d 44 (1981)). In an open view situation, the officer "'is either on the outside looking outside or on the outside looking inside to that which is knowingly exposed to the public.'" *Barnes*, 158 Wn. App. at 612 (quoting *Seagull*, 95 Wn.2d at 902). There is no reasonable expectation of privacy in an item in open view and, therefore, observation of the evidence "is not within the scope of the constitution." *Barnes*, 158 Wn. App. at 612 (citing *Perez*, 41 Wn. App. at 483). "It is well established that a person has a diminished expectation of privacy in the visible contents of an automobile parked in a public place." *Barnes*, 158 Wn. App. at 612 (citing *State v. Young*, 28 Wn. App. 412, 416, 624 P.2d 725, *review denied*, 95 Wn.2d 1024 (1981)).

Here, the officers did not observe the firearm during a search or invasion of the car, plain view, but rather the court held that they saw the firearm in the backseat of the car through the

window-open view. Therefore, the open view doctrine, not the plain view doctrine, properly applies in this case. *Barnes*, 158 Wn. App. at 612-13. Under the open view doctrine, observation of an item does not constitute a search; however, there must also be exigent circumstances to justify the seizure of the item in open view. *Barnes*, 158 Wn. App. at 613. Millan argues that the seizure of the weapon was not justified because the officers could not identify the firearm as relevant evidence and there were no exigent circumstances. We disagree.

First, the officers had probable cause to believe that a domestic violence assault had occurred. At the time, witnesses reported that the couple was fighting, Millan had hit his wife several times, and the assault continued after Millan dragged his wife into the car. Although the officers originally arrested Millan for fourth degree assault (before seeing the firearm in open view), the presence of the firearm was clearly relevant evidence of assault. *Barnes*, 158 Wn. App. at 613. The fact that Millan was not charged with the crime for which he was arrested does not negate the officers' probable cause to arrest for that crime nor does it render unjustified seizure of evidence relevant to the crime of arrest. Thus, officers properly seized the weapon at the time they arrested Millan for assault and observed it in open view. Therefore, the officers lawfully seized the pistol and it is admissible evidence. *Barnes*, 158 Wn. App. at 613-14.

Second, the trial court found that there were safety concerns for the officers and the public. These exigent circumstances existed and justified the officers seizing the weapon after observing it in open view. We consider the totality of the circumstances to determine whether exigent circumstances exist. *State v. Smith*, 165 Wn.2d 511, 518, 199 P.3d 386 (2009). Although we consider the following six factors when determining whether exigent circumstances exist, it is not necessary for all six factors to be met. *State v. Cardenas*, 146 Wn.2d 400, 408, 47 P.3d 127, 57 P.3d 1156 (2002), *cert. denied*, 538 U.S. 912 (2003). The six factors are

(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) whether there is reasonably trustworthy information that the suspect is guilty; (4) there is strong reason to believe that the suspect is on the premises; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the entry [can be] made peaceably.

*Cardenas*, 146 Wn.2d at 406. In addition, five specific circumstances may be considered exigent circumstances including danger to the arresting officer or to the public. *State v. Tibbles*, 169 Wn.2d 364, 370, 236 P.3d 885 (2010) (quoting *State v. Counts*, 99 Wn.2d 54, 60, 659 P.2d 1087 (1983)).

Millan argues that there were no exigent circumstances because the officers had already arrested Millan and placed him in handcuffs so there was no risk to officer safety. But Millan's cursory analysis of exigent circumstances does not take into account the totality of circumstances present in this case. Here, the exigent circumstances need not be such as to allow the officers to search Millan's otherwise private vehicle. Rather, the officers observed a pistol in open view. So the issue is whether, when the pistol can be seen from outside the car, the exigent circumstances warrant seizure of the evidence Millan has left open to public view. Although Millan had already been arrested, his wife was unsecured and in the area of the car. Millan's wife was clearly upset and uncooperative with arresting officers. Based on citizen witness reports, Millan was being arrested for domestic violence assault—an assault Millan's wife said did not occur. Given the totality of the circumstances, an unsecured firearm posed a clear risk to officer safety should Millan's wife take action regarding her objections to the arrest of her husband, and public safety should the car be left on a public street with a gun clearly visible though the car's window. Therefore, exigent circumstances existed which justified lawful seizure of the pistol after the officers observed it in open view.

No. 43244-7-II

Although the trial court misstated that it relied on the "plain view" exception to the warrant requirement, the firearm was properly seized and was nonetheless admissible evidence. The firearm was in open view through the window of the vehicle and the officers had reason to believe the firearm was relevant evidence in the assault on Millan's wife. Moreover, under the circumstances presented, failure to secure the weapon would have posed a risk to officer and public safety. Therefore, there were exigent circumstances which justified immediately seizing the pistol left in public view without a warrant before allowing Millan's wife to drive the car away. Accordingly, we affirm the trial court's denial of Millan's motion to suppress the firearm and affirm his conviction for unlawful possession of a firearm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

QUINN-BRINTNALL, P.J.

We concur:

PENOYAR, J.

MAXA, J.

7