FILED
COURT OF APPEALS
DIVISION II

2013 APR -2 AM 8: 48

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>    v.<br><br>STANLEY CURTIS JUVE,<br><br>                  Appellant. | No. 42369-3-II<br><br>UNPUBLISHED OPINION |

VAN DEREN, J. — Stanley Curtis Juve appeals his convictions on one count of felony harassment and six counts of second degree unlawful possession of a firearm. He argues that the trial court erred in denying his motion to suppress firearms seized from his home under a search warrant, claiming that the warrant was issued without probable cause because there was no nexus between the crime of felony harassment and the firearms and no nexus between the firearms and his home. Because the probable cause affidavit included information linking the firearms to the charged crime of felony harassment and the firearms to Juve's home, we hold that the trial court did not err in denying his suppression motion.

## FACTS

On January 3, 2011, Longview Police Officer Scott McDaniel learned that Juve had called an Internal Revenue Service (IRS) office on a recorded line and told an employee that he

would go to the Red Canoe Credit Union and "shoot them." Clerk's Papers (CP) at 12. Juve claimed that he wanted $8,000 wired into his account at the Red Canoe Credit Union by 1:00 PM, and that if the money was not received by that time, he would go to the credit union and begin shooting the people there. A witness reported that Juve sounded "very irrational and unstable" when he made the telephone call. The IRS employee who received the call stated that Juve told her that he was armed with a rifle and that he told her to listen because he wanted her to hear it. Believing that Juve was about to shoot the weapon, the IRS employee held the phone away from her ear.

After being notified of the IRS call, police officers began searching for Juve. While they were searching, two clerks reported that Juve was recently at their gas station and that Juve said that he "was going to go shoot up the Red Canoe [C]redit [U]nion." CP at 13. Shortly thereafter, officers located Juve outside a nearby restaurant and McDaniel asked him if he made threats to shoot people at the Red Canoe Credit Union. Juve initially denied making the threats, but when McDaniel told him that the IRS call had been recorded, Juve stated that "sometimes you make comments that you don't actually mean." CP at 13.

The following day, McDaniel spoke with a teller at the Red Canoe Credit Union. The teller reported that at approximately 11:10 AM on January 3, Juve arrived at the Red Canoe Credit Union and that he "appeared frustrated." CP at 13. Juve told the teller that he bought his first home and was qualified for an $8,000 tax credit, that he was upset because he had not received his money, and that he blamed the credit union for the delay. Juve told the teller that he owned a gun and planned to bring it to the credit union to shoot all of the employees and that he had enough bullets to do it. He also told the teller that he "cocked" his gun when he was speaking to the IRS employee on the telephone. CP at 14.

Juve was arrested in his home later that day, January 4. On January 7, the State charged Juve with one count of felony harassment[1] based on his statements to the credit union teller. On January 18, based on an affidavit submitted by McDaniel containing essentially the same facts as set forth above, a judge issued a search warrant for Juve's home. The affidavit stated that McDaniel had "cause to believe that evidence of the crime of felony harassment may be found" in Juve's home, including:

> 1. Items of personal property which tend to identify the person (s) in residence, occupancy, control or ownership of the premise that is the subject of this warrant, including but not limited to canceled mail, deeds, leases, rental agreements, photographs, personal telephone books, utility and telephone bills, statements, identification documents, and keys.
> 2. Firearms and Handguns, Gun parts or pieces, Ammunition and Ammunition Boxes, Holsters and or Gun Storage Cases, Gun Maintenance Items, Spent Cartridges and or empty shell casings, Sales receipts relating to guns, weapons, and related sales items, Weapons discharge residue, DNA Residue, fingerprints, personal effects and papers relating to identity of occupants.

CP at 14.

On January 25, officers executed the search warrant and seized six firearms from Juve's home. Based on the evidence seized under the warrant, the State amended the information to add six counts of second degree unlawful possession of a firearm[2] because Juve had previously violated a domestic violence protection order. At the time the officers searched Juve's home, Juve was incarcerated and had been since the time of his arrest.

Before trial, Juve moved to suppress the firearms. He argued that the warrant was not supported by probable cause because the affidavit did not establish the required nexus between

---

[1] RCW 9A.46.020(1)(a)(i), (1)(b), and (2)(b). RCW 9A.46.020(2)(b) was amended in 2011, but the changes are not relevant to our analysis here. LAWS OF 2011, ch. 64, § 1. Accordingly, we cite the current version of the statute.

[2] RCW 9.41.040(2)(a)(i).

felony harassment and the firearms or a nexus between the firearms and Juve's home. The trial court denied the motion and a jury convicted him of all crimes charged. Juve appeals.

ANALYSIS

Juve argues that the search warrant affidavit failed to establish probable cause to search his home for firearms because the affidavit failed to set forth facts establishing the required nexus between (1) the crime—felony harassment—and the items to be seized—firearms and (2) the place to be searched—Juve's home—and the firearms. We disagree.

I.    STANDARD OF REVIEW

The warrant clause of the Fourth Amendment to the United States Constitution and article I, section 7 of our state constitution require that a trial court issue a search warrant only on a determination of probable cause. *State v. Vickers*, 148 Wn.2d 91, 108, 59 P.3d 58 (2002). Probable cause exists where the search warrant affidavit sets forth "facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004). Accordingly, "probable cause requires a nexus between [the] criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched." *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

"Two different standards apply to our review of a probable cause determination." *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). First, we review the trial court's findings on "the events 'leading up to the stop or search'" for abuse of discretion. *Emery*, 161 Wn. App. at 201 (internal quotation marks omitted) (quoting *In re Det. of Petersen*, 145 Wn.2d 789, 800, 42 P.3d 952 (2002)). Second, we review

de novo the issuing judge's legal conclusion that the information in the probable cause affidavit, as a whole, amounts to probable cause. *Emery*, 161 Wn. App. at 202. But in reviewing the trial court's legal determination of probable cause, we give great deference to the trial court. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008).

Our review is limited to the four corners of the probable cause affidavit. *Neth*, 165 Wn.2d at 182. Facts standing alone that would not support probable cause can do so when viewed together with other facts. *State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). "We evaluate an affidavit 'in a commonsense manner, rather than hypertechnically, and any doubts are resolved in favor of the warrant.'" *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012) (quoting *State v. Jackson*, 150 Wn.2d 251, 265, 76 P.3d 217 (2003)).

II.    NEXUS BETWEEN FELONY HARASSMENT AND FIREARMS

Juve argues that the warrant was not supported by probable cause because the affidavit failed to establish the required nexus between the criminal activity and the items to be seized. He contends that there is no nexus between felony harassment and possession of firearms because felony harassment is determined under an objective standard and does not require proof that the defendant intended to carry out the threat. The State responds that the firearms were relevant to corroborate witnesses' statements, to prove Juve's identity, and to prove that Juve's statement was a "true threat." Br. of Resp't at 9 (boldface omitted). We agree with the State.

A person is guilty of felony harassment if that person knowingly threatens to kill the person threatened or any other person immediately or in the future and "by words or conduct places the person threatened in reasonable fear that the threat will be carried out." RCW 9A.46.020(1)(b); *State v. Kilburn*, 151 Wn.2d 36, 39-40, 84 P.3d 1215 (2004). The felony harassment statute criminalizes only "true threats." *Kilburn*, 151 Wn.2d at 47. "A 'true threat' is

5

'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of another person." *Kilburn*, 151 Wn.2d at 43 (alteration in original) (internal quotation marks omitted) (quoting *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001)).

"A true threat is a serious threat, not one said in jest, idle talk, or political argument." *Kilburn*, 151 Wn.2d at 43. "Whether a statement is a true threat or a joke is determined in light of the entire context, and the relevant question is whether a reasonable person in the defendant's place would foresee that in context the listener would interpret the statement as a serious threat or a joke." *Kilburn*, 151 Wn.2d at 46. Thus, "whether a true threat has been made is determined under an objective standard that focuses on the speaker." *Kilburn*, 151 Wn.2d at 44. In light of these considerations, RCW 9A.46.020 "does not require that the State prove that the speaker intended to actually carry out the threat." *Kilburn*, 151 Wn.2d at 48.

RCW 9A.46.020 also has a knowledge requirement, which requires that the speaker "know that he or she is communicating a threat, and must know that the communication he or she imparts directly or indirectly is a threat of intent to [kill] the person threatened or . . . another person." *State v. J.M.*, 144 Wn.2d 472, 481, 28 P.3d 720 (2001). But the statute does not require that the State prove that the speaker intends to carry out the threat. *J.M.*, 144 Wn.2d at 481-82.

Juve contends that in light of this objective standard, his ownership of firearms was irrelevant to prove that he committed the crime of felony harassment; thus, the warrant lacked the required nexus between the crime and the evidence to be seized. Relying on *State v. Barnes*, 158 Wn. App. 602, 610, 243 P.3d 165 (2010), the State responds that the firearms were relevant to proving the crime of felony harassment because they were "evidence which could lead a

6

reasonable person to infer that when . . . Juve made his threats he was genuine." Br. of Resp't at 12.

In *Barnes*, the defendant became upset when he was unable to receive assistance with his bank account and while at the bank he said, "'I feel like going and getting a gun and shooting everyone.'" 158 Wn. App. at 605 (quoting *Barnes* Report of Proceedings at 4). Two hours after the incident, an officer ordered the defendant to get out of his car that was parked approximately one-half mile from the bank and arrested him for felony harassment. *Barnes*, 158 Wn. App. at 606. The officer then returned to the defendant's vehicle and seized a gun box from the front passenger seat. *Barnes*, 158 Wn. App. at 606. The trial court granted the defendant's motion to suppress the evidence but this court reversed, holding:

> The fact that Barnes had access to a gun when he threatened to return and shoot everyone at the bank branch is evidence which could lead a reasonable person to infer that his threat was genuine and that he had taken steps to carry it out. Accordingly, the gun case is relevant evidence properly offered to prove that Barnes made a "true threat" as required to prove a violation of RCW 9A.46.020(1)(a)(i).

*Barnes*, 158 Wn. App. at 610.

Juve contends that *Barnes* is factually distinguishable both spatially and temporally. In *Barnes*, the officers searched the defendant's vehicle two hours after he allegedly made threats at a bank that was located within one-half mile of the vehicle. 158 Wn. App. at 606. By contrast, here, the officers did not obtain a warrant for the firearms until 15 days after the events giving rise to the felony harassment charge and the officers seized them from Juve's home, which was not located near the credit union where Juve made the threats.

The State contends that these factual differences are immaterial because "[l]ike in *Barnes*, the fact that . . . Juve had access to guns and ammunition when he threatened to return

7

and shoot everyone at the credit union is evidence which could lead a reasonable person to infer that when . . . Juve made his threats he was genuine." Br. of Resp't at 12. The State is correct; evidence of Juve's possession of firearms was relevant to prove the crime of felony harassment.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. Facts "of consequence" to the determination of whether Juve committed felony harassment were those facts relating to whether Juve should have reasonably foreseen that the teller would have interpreted his statements as a serious threat. ER 401; *Kilburn*, 151 Wn.2d at 46. Other facts of consequence to the determination of whether Juve committed felony harassment were those tending to show that he did not make the statements "in jest, idle talk, or political argument." *Kilburn*, 151 Wn.2d at 43.

Here, Juve correctly notes that the teller had no knowledge of the firearms in Juve's home and their discovery was not proximate in time or place to the events that occurred at the credit union. But Juve told the teller that he had "cocked" his gun when he was speaking to the IRS employee on the telephone, and by showing that he actually possessed a gun, the State could present evidence tending to show that Juve should have realized that his threats would be interpreted as genuine. CP at 14. Moreover, the fact that he actually owned firearms was potentially relevant to rebut a claim that Juve made the statements in jest. Thus, the fact that Juve possessed firearms was relevant to the charge of felony harassment.

The State also contends that even if the firearms were unnecessary to prove an element of the crime of felony harassment at trial, the warrant was proper because "search warrants, in addition to authorizing a search for direct evidence of the crime at issue, may be issued to search for evidence that may . . . 'support the bringing of additional, related charges,' or 'might prove

helpful in impeaching [a defendant] or rebutting various defenses he could raise at trial.'" Br. of Resp't at 6 (second alteration in original) (quoting *Messerschmidt v. Millender*, __ U.S. __, 132 S. Ct. 1235, 1248, 182 L.Ed.2d 47 (2012)). Thus, the State argues that Juve's ownership of firearms corroborated witness testimony regarding his alleged threats and was relevant to prove Juve's identity.

The State asserts that Juve's firearm possession may have been helpful in corroborating witness testimony and "was relevant evidence because the evidence of possession made it more likely that . . . Juve cocked a gun over the phone, threatened to shoot a gun to prove he had it, claimed to have rifles, and made other similar threats as the witnesses alleged." Br. of Resp't at 8. The State also claims that without the firearm evidence, Juve could have claimed at trial that the witnesses' testimony was not credible because Juve did not own any firearms. Finally, the State argues that if Juve had "denied being the person involved, his possession of guns and ammunition could . . . have been evidence used to help establish his identity as the speaker of the threats."[3] Br. of Resp't at 9.

We agree with the State, and hold that the probable cause affidavit established a sufficient nexus between this crime of felony harassment and Juve's possession of firearms.[4]

---

[3] Ultimately, there were no identity issues at trial, nor was there a genuine risk of Juve denying that he made the statements. The probable cause affidavit stated that Juve provided his full name, social security number, and home address to the IRS agent over the telephone in a recorded call and the teller at the credit union recognized Juve and had assisted him in the past.

[4] We note that the State could also have established the required nexus between the crime and the firearms if, instead of seeking the firearms as evidence of the crime of felony harassment, it instead sought them as evidence of second degree unlawful possession of a firearm. The State likely could have done so because Juve was already in custody at the time the State requested the warrant, Juve had stated that he owned firearms, and the State likely knew that he had violated a domestic violence protection order by possessing firearms.

II.    NEXUS BETWEEN FIREARMS AND HOME

Juve next claims that the search warrant was not supported by probable cause because the affidavit did not establish a sufficient nexus between the firearms and the place to be searched—Juve's home, relying on *State v. Dalton*, 73 Wn. App. 132, 868 P.2d 873 (1994) and *Goble*. We disagree with this assertion as well.

In *Dalton*, the trial court denied the defendant's motion to suppress marijuana and drug paraphernalia found in his home in Washington under a warrant issued after police received information that he was transporting drugs to an address in Alaska. 73 Wn. App. at 134-36. We reversed, holding that "'[p]robable cause to believe a man has committed a crime on the street does not necessarily give rise to probable cause to search his home.'" *Dalton*, 73 Wn. App. at 140 (alteration in original) (quoting *Commonwealth v. Kline*, 234 Pa. Super. 12, 17, 335 A.2d 361 (1975)). We noted that there was no independent police investigation corroborating the informants' tips, and that "none of the information provided to the [issuing judge] tied Dalton's home to controlled substances." *Dalton*, 73 Wn. App. at 139.

Similarly, in *Goble*, the trial court denied the defendant's motion to suppress evidence of drugs found in his home under a search warrant issued after police received an anonymous tip that the defendant received drugs at his post office box and discovered methamphetamine in a package addressed to his post office box. 88 Wn. App. at 505-07. A judge issued a search warrant for Goble's home that was only to be executed after Goble was seen bringing drugs into the home. *Goble*, 88 Wn. App. at 506-07. We reversed, holding that the affidavit provided no nexus between the drugs and Goble's home because it contained no information that he had previously dealt or stored drugs at his home or that he intended to do so in the future. *Goble*, 88 Wn. App. at 512.

10

Here, the acts giving rise to the crime of felony harassment occurred at the credit union, not at Juve's home, and Juve did not mention his home in connection with the firearms. Thus, Juve correctly notes that the connection between the evidence and the residence required in *Dalton* and *Goble* was not present here. But the State contends, and we agree, that the reasoning in *Dalton* and *Goble* is not applicable here because firearms, unlike drugs, are likely to be kept in an individual's home and are kept for longer periods of time; thus, additional information connecting firearms to Juve's home was not necessary to establish the required nexus.

The State cites *United States v. Steeves*, 525 F.2d 33 (8th Cir. 1975) in support of its contention that Juve's statements that he owned firearms provided probable cause to search his home for firearms because firearms are items likely to be stored in the home. In *Steeves*, the Eighth Circuit Court of Appeals held that a warrant issued nearly three months after a bank robbery was not the result of stale information and affirmed the trial court's denial of the defendant's motion to suppress firearms found in his home after the search warrant was executed. 525 F.2d at 38. Although the focus in *Steeves* was staleness of the information in the affidavit, the court noted that "a highly incriminating or consumable item of personal property is less likely to remain in one place as long as an item of property which is not consumable or which is innocuous in itself or not particularly incriminating." 525 F.2d at 38. Thus, the court held that the gun was likely to be found in the defendant's home even months after the bank robbery because the gun was "not unlawful in itself or particularly incriminating" and because "people who own pistols generally keep them at home or on their persons." *Steeves*, 525 F.2d at 38.

Unlike the drugs in *Dalton* and *Goble*, which were both "highly incriminating" and "consumable," the guns here were not incriminating absent knowledge of Juve's protection order

11

violation, were not consumable, and were an item likely to be found either on Juve's person or in his home. *Steeves*, 525 F.2d at 38. Accordingly, because Juve was in custody and guns were not found on his person, Juve's statements that he had a gun provided a sufficient nexus between the guns and his home to support probable cause for issuance of a search warrant. *See also United States v. Smith*, 182 F.3d 473, 480 (6th Cir. 1999) ("Courts have acknowledged that individuals who own guns keep them at their homes."); *United States v. Rahn*, 511 F.2d 290, 293-94 (10th Cir. 1975) (despite no observation of guns at residence, there was sufficient nexus between firearms and home because "it is pretty normal . . . for individuals to keep weapons in their homes").

We hold that the probable cause affidavit established a nexus between the criminal activity and the items to be seized and also established a nexus between the items to be seized and Juve's home. The affidavit contained information giving rise to a reasonable inference that the guns would be found in Juve's home based on his statements to the credit union teller and his statements to the IRS agent, when he cocked the gun into the telephone. Juve said he would return with guns and ammunition, showing that he did not have a gun at hand when talking to the credit union teller. Thus, because he did not have a gun on his person or, as in *Barnes*, in a nearby vehicle, it was reasonable for the officers to conclude that Juve likely had guns in his home, a location where they are likely to be kept. *See Steeves*, 525 F.2d at 38. With regard to the request to search for his identity, there was a clear nexus between his known identity and the house where he was arrested.

No. 42369-3-II

Thus, we affirm the trial court's order denying suppression of the firearms seized from Juve's home and affirm his conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_Van Deren, J._
VAN DEREN, J.

We concur:

_Quinn-Brintnall, J._
QUINN-BRINTNALL, J.

_Worswick, C.J._
WORSWICK, C.J.

13